# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* McKINVEN, Minors.

UNPUBLISHED
December 3, 2015

Nos. 327043; 327044
Van Buren Circuit Court
Family Division
LC No. 13-017808-NA

Before: MARKEY, P.J., and OWENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent father and respondent mother appeal as of right the March 10, 2015 order terminating their parental rights to the minor children, TM and EM. The trial court terminated respondents' parental rights pursuant to MCL 712A.19b (3)(g), "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age," and (j), "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." We affirm.

## I. FACTUAL BACKGROUND

The Department of Human Services filed a petition alleging abuse and neglect of the minor children, TM and EM. A preliminary order was entered putting the minor children in the temporary custody of the court. The minor children were placed into foster care with their paternal grandmother and remained in that placement throughout the duration of this case. A second petition was subsequently filed to terminate the parental rights of the respondents. At the conclusion of the termination hearing, the court delivered its opinion from the bench terminating respondents' parental rights.

The first petition alleged that the children had been left with their grandmother on several occasions and at least once with bed bugs and strep throat. At the termination hearing, it was stated that the bed bugs came from the Kalamazoo Gospel Mission, where the children and respondent mother were staying because respondent mother was homeless. During this time,

-1-

respondent father was serving eighteen months' to fifteen years' imprisonment for second-degree home invasion.[1]

Throughout the duration of this case, respondent mother had unstable housing, sporadic attendance at supervised visits, and multiple positive drug tests. It was also stated at the termination hearing that respondent mother tested positive for cocaine after the birth of both minor children. It is unclear whether the children had cocaine in their system when they were born, but the trial court indicated that it was likely. On the date the termination hearing began, respondent mother had not completed a parenting class but did have a job.

Respondent father was incarcerated during the majority of this case. Upon release from prison, respondent father lived at a motel. At the time of the termination hearing, respondent father did not have a job or any prospective long-term housing.

Respondent father did meet with the minor children on multiple occasions, one of which was observed by the minor children's counselor. The counselor testified that respondent father lacked discipline throughout the entire meeting. She testified that respondent father threatened the children with "time-out" on multiple occasions, however did not follow through. There was also an incident in which TM threw a matchbox car at respondent father, which prompted the counselor to intervene and take control of the situation.

The counselor also testified that she observed overt displays of anxiety and behavioral problems by the minor children following visits with the respondents. In particular, TM was terrified that respondent mother was going to steal him and had nightmares involving both respondents. Further, EM displayed "bratty" behavior following visits with respondents.

The counselor further testified that TM reported incidents of sexual abuse. TM underwent a sexual abuse assessment. The report following the assessment discussed incidents of sexual assault from an unidentified third party. It further discussed an incident in which TM, and possibly EM, were placed into a trash bag and then into a dumpster. The trial court concluded that they thought some sort of sexual abuse had occurred and that some version of the trash bag incident also occurred. However, the trial court did not attribute sexual abuse to respondent father or respondent mother. The counselor concluded that the minor children were suffering from post-traumatic stress disorder.

The trial court concluded that both respondents were unfit to provide the minor children with the needed stability and care. The court explained that respondent mother did not have an adequate place to live, did not complete a drug treatment program, and did not complete parenting classes. Respondent father had been unable to find a job, had an extensive criminal

---

[1] Respondent father has a lengthy criminal record. Of note are his convictions for domestic violence; disturbing the peace, which was a result of a domestic violence incident; retail fraud; malicious destruction of property; and aggravated assault, which was reduced from the original charge of assault with a dangerous weapon. Father also has two personal protection orders against him.

history, and was living at a motel. The court also explained that respondent father had not benefitted from the parenting classes offered to him, as shown by the difficulties in the observed visitation with the minor children. The court found that respondents' situation would not change in the next twelve months, and that the prosecutor and DHS had met their burden of proof.

## II. TERMINATION OF RESPONDENT MOTHER'S PARENTAL RIGHTS

Respondent mother first argues that the trial court clearly erred in finding that the statutory grounds for termination were established by clear and convincing evidence. We disagree. This court reviews for clear error a trial court's decision that a ground for termination was proven by clear and convincing evidence. MCR 3.977(K). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014) [internal citations omitted]. "Clear error signifies a decision that strikes [this Court] as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "Termination of parental rights is appropriate when the DHS proves one or more grounds for termination by clear and convincing evidence. It is only necessary for the DHS to establish by clear and convincing evidence the existence of one statutory ground to support the order for termination of parental rights." *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012) (citations omitted).

The first ground for the termination at issue was MCL 712A.19b(3)(g), which provides for termination when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." In *In re White*, 303 Mich App 701; 846 NW2d 61 (2014), this court upheld a termination of the parental rights of the respondent under this provision when the evidence showed that the parent failed to participate in and benefit from a service plan. The court reasoned that "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *Id*. at 710.

In this case, respondent mother substantially failed to comply with the stipulations in the service plan following the original disposition hearing. Respondent mother did eventually abstain from using drugs, starting in October of 2014, and she made some of the scheduled visitations with the children; however, she missed approximately half of them. Furthermore, as of the hearing, respondent mother had yet to complete a parenting class, find stable housing, and participate in her own counseling. These failures indicated that respondent mother will be unable to provide the proper care and custody for the minor children within a reasonable time.

Respondent mother cites the case *Matter of Hulbert*, 186 Mich App 600; 465 NW2d 36, (1990), and indicates that it holds that speculative opinions do not meet the required clear and convincing evidence standard. However, this reliance is misplaced. *Hulbert* has very different facts from this case. In *Hulbert*, the only evidence of neglect was a failure to observe a child's apnea monitor and administer a proper dosage of medicine. *Id*. at 601. The trial court took this evidence and combined it with the potential harm that the respondents might inflict on the children because of the respondent's alleged mental disorders. *Id*. at 602. The court then stated,

"[t]his record contains merely the speculative opinions of the psychologists regarding what might happen in the future. In short, given *the minimal evidence of past neglect*, we do not feel that the fact that respondents' mental conditions 'might,' 'could,' or are 'likely to' result in neglect or abuse is clear and convincing evidence sufficient to warrant termination." *Id*. at 605 [emphasis added].

This case, in contrast, has clear instances of neglect. Respondent mother was homeless and shifting between temporary residences. The minor children were likely born with cocaine in their system. There were reports of the minor children being stuffed into a trash bag. There were allegations of sexual abuse with at least some evidentiary support. There were allegations that the children were not fed properly and suffered from bed bugs and strep throat, and then left with their grandmother. In totality, there is clear evidence of potential neglect. To the extent the trial court's conclusion was based on its evaluation of the credibility of the witnesses before it, we must defer to the trial court. *LaFrance Minors*, 306 Mich App at 723.

Respondent mother further argues that the trial court's emphasis on events that occurred as far back as 2013 is misplaced and did not establish clear and convincing evidence. Specifically, respondent mother states that she cured her housing instability. However, at the time of the hearing, respondent mother still had not secured stable housing.[2] Incongruously, respondent mother contends that she cured her housing instability, but then contends, in the same paragraph of her appellant brief, that she should be afforded more time to establish suitable housing. One cannot both have a problem cured and need more time to cure that same problem.

Furthermore, the use of past events to predict future events is normal. MCL 712A.19b(3)(g) requires proof that a parent has not provided proper care and custody and that they will not be able to do so within a reasonable time. Implicit in this statute is the idea that past events may show that the parents will be unable to provide the proper care in the future. In *In re White*, our Court held that failure to participate in a service plan showed that the parent will be unable to provide proper care and custody. *In re White*, 303 Mich App at 710. In *In re Trejo*, 462 Mich 341, 362; 612 NW2d 407 (2000), the Supreme Court held that "the evidence of respondent's inability to obtain and maintain suitable housing supports the court's conclusion that respondent, without regard to her intent, had failed to provide proper care or custody of her children." In *In re BZ*, 264 Mich App 286, 300; 690 NW2d 505 (2004), this Court upheld termination of the respondent's parental rights even though "respondent maintained employment and ultimately separated from her abusive boyfriend." *Id*. at 300. Our Court stated that "she only minimally complied with the more important aspects of the family plan, including visitation with the children." *Id*. Therefore, it is clear that trial courts can, and must, rely upon past events to predict the future. The precedent upon which appellant relies is not proper in this case and is more suited for a case in which little evidence of past neglect can be offered, or possibly where a past event is extremely remote.

---

[2] At the hearing, respondent mother stated that she was very close to obtaining an apartment. However, the minor children's case worker stated that respondent mother had stated this before and not obtained it.

Respondent mother also contends that she has partially complied with the plan and should be afforded more time to fully comply. Respondent mother cites *In Re Newman*, 189 Mich App 61; 472 NW2d 33 (1991), in support of this idea. In *Newman*, the parents' rights were terminated by the trial court because of their failure to maintain an adequate home and to comply with conditions set forth in the prior parental termination hearing. *Id.* at 63-64. This Court reversed the decision because the parents had not been given the opportunity to rectify the problem. *Id.* at 67-68. This Court discussed the parents' lack of education, hampered intellectual capacity, and inability to maintain hygiene in the home. *Id.* at 70. This Court concluded that proper education of how to maintain the home would allow the parents to correct their deficiency as parents. *Id.* at 70.

Again, this case is much different. Here, respondent mother had since September of 2013 to correct her deficiencies as a parent. However, until October of 2014, respondent mother remained unchanged. She routinely skipped drug tests, missed visits with the minor children, and lived from place to place. It is true that respondent mother has improved her actions recently, but the deficiency the court relied upon to terminate her rights was much different than those in *Newman*. Respondent mother chose to not show up for visits with her children, to continue to use drugs, to steal needles, and not obtain stable housing. Therefore, this case is not reconcilable with the facts of *Newman*.

Furthermore, the statutory grounds for termination exist "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *White*, 303 Mich App at 710 [internal citation and quotations omitted]. In this case, respondent mother is still without stable housing and has yet to complete parenting classes and substance abuse counseling. Even though she has rectified some of her deficiencies, significant ones still remain that were present when the children came into foster care. Therefore, termination in this case is not premature.

In conclusion, the fact that respondent mother has a job and potential housing is not enough to establish clear error in the trial court. Respondent mother only minimally complied with the case service plan and has yet to firmly establish suitable housing for the minor children. Therefore, the court did not clearly err when terminating respondent mother's rights pursuant to MCL 712A.19b(3)(g).

The trial court also terminated respondent mother's parental rights pursuant to MCL 712A.19b(3)(j), finding that there was a reasonable likelihood that the children would be harmed if returned to respondent mother's care. Because at least one ground exists for termination, this Court need not consider or decide this additional ground on which the trial court based its termination. *In re HRC*, 286 Mich App 444,461; 781 NW2d 105 (2009). However, we will address this issue for sake of completeness.

Harm includes both physical harm and emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). TM has been seeing a counselor for therapy since March 18, 2014. During that time, TM expressed deep concerns about being stolen by respondent mother, and that he wished to remain in the care of his grandmother. Further, EM has shown increased agitation, or as her counselor put it, she has become "bratty." The children's counselor and care worker both stated that the children could potentially face mental harm if returned to respondent

mother. This was evidenced by nightmares TM was having in which he was stolen by respondent mother and killed. The record tends to indicate that the minor children are facing some mental injury and likely would be subject to more if returned to respondents. Regarding physical harm, respondent mother had yet to secure permanent housing. When the children were homeless in the past, they contracted bed bugs and strep throat, strongly suggesting a likelihood of further physical harm if returned to a homeless situation with respondent mother. Therefore, the court did not clearly err when finding clear and convincing evidence under MCL 712A.19b(3)(j).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (quotation marks and citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

The trial court did not clearly err in finding that termination of respondent mother's parental rights was in the best interest of the minor children. Though most of the reports and testimony centered on TM's actions, both children displayed anxiety during and after meetings with respondent mother. Further, TM explicitly stated that he wished to remain with his grandmother, and he was afraid respondent mother was going to steal him. These thoughts all tend to indicate that TM and respondent mother's bond was not very close. Further, respondent mother's parenting ability does not appear to have improved since the start of this case. She has not completed any parenting classes and neglected to take responsibility for her actions, and the trial court would not have been out of line in concluding that her recent abstinence from drug use was insufficient to show a meaningful change. Respondent mother also did not secure stable housing, and the trial court would not have been unreasonable to be dubious of her promise of stability and permanency. Respondent mother has not established that she is unlikely to revert to her old ways and once again endanger the minor children. Therefore, the court did not err when it found that it was in the best interest of the minor children to terminate the parental rights of respondent mother.

## III. RESPONDENTS' CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND RESPONDENT FATHER'S CLAIM OF CLEAR ERROR ARE ABANDONED.

This Court considers the remaining issues to be abandoned, and thus declines to address them. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris,* 261 Mich App 44, 50; 680 NW2d 17 (2004). In regard to the ineffective assistance of counsel claims, respondents merely state their position without any analysis describing how effective counsel would have changed the outcome.

Regarding respondent father's assertion of clear error in terminating his parental rights, he merely raises the issue in the statement of issues presented, but fails entirely to address it within the body of his appellant brief. Therefore, this court considers the remaining issues abandoned.[3]

    Affirmed.

                                  /s/ Jane E. Markey
                                  /s/ Donald S. Owens
                                  /s/ Amy Ronayne Krause

---

[3] Had this court addressed these issues, they would not have affected the outcome of this case.