595 N.W.2d 167 (1999)
235 Mich. App. 582
In re E.P.
In re Minor.
Family Independence Agency, Petitioner-Appellee,
v.
Marie Pantaleon, Respondent-Appellant.
Docket No. 207394.
Court of Appeals of Michigan.
Submitted February 9, 1999, at Detroit.
Decided March 26, 1999, at 9:05 a.m.
Released for Publication June 22, 1999.
*169 Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, and Susan A. Harris, Assistant Attorney General, for the petitioner.
Richard A. Seid, Deborah P. Paruch, and Patrick A. Keenan, Detroit, for the respondent.
Legal Aid and Defenders Association of Detroit (by William E. Ladd), for the minor child.
Before MURPHY, P.J., and GAGE and ZAHRA, JJ.
*168 MURPHY, P.J.
Respondent appeals as of right from a dispositional order of the juvenile division of the Wayne County Probate Court (juvenile court) removing her minor child from respondent's home, where he was on an extended home visit, and returning him to foster care. We affirm.
Respondent moved to the United States from Haiti in 1975, and she became a United States citizen in 1981. The minor child was born to respondent on June 11, 1993. The child first came to petitioner's attention after respondent left him with a baby-sitter. Respondent approached a woman at an apartment house, asking if anybody did baby-sitting at the building. The woman agreed to watch the child, and respondent left the child with the woman without giving her any information about herself or even telling her the child's name. The woman contacted the police when she did not want to care for the child any further, and the police then contacted petitioner. Petitioner moved to obtain jurisdiction over the child, but the petition was dismissed for lack of evidence.
Subsequently, petitioner again sought to take jurisdiction over the child, this time alleging that respondent had informed petitioner that there were holes in the house in which she and the child were living. Petitioner also alleged that there was no working heat in the home, that the electrical wiring was makeshift, that the roofing structure had fire damage, that respondent had no documentation to occupy the dwelling, and that respondent had been informed that the dwelling was not safe or suitable for the child but had nevertheless failed to move. The juvenile court found probable cause that the allegations in the petition were true and ordered the child placed in temporary foster care, allowing respondent supervised visitation.
At a pretrial hearing regarding petitioner's action to acquire jurisdiction over the child, respondent agreed that the home she and the child were occupying was not suitable. The juvenile court therefore ordered that the child could be placed with her as long as she maintained suitable housing and complied with the case service plan. The child was not yet adjudicated a temporary ward of the court, but rather, with the above specified conditions, the court stated that it would allow the child to be with respondent on an "extended visit" *170 basis. However, because respondent did not find suitable housing, the child remained in foster care, but respondent was allowed scheduled visitation.
Thereafter, the juvenile court conducted a temporary custody bench trial, wherein the court allowed the petitioner to amend its petition to include allegations that the mother was unfit because of psychological problems and that she twice attempted to take the child after scheduled visits. Petitioner also moved, at this hearing, for visitation to be discontinued because of respondent's erratic behavior during visits. In support of the motion, Steven Knight, a protective services investigator for petitioner, testified that during one of the visits he was called downstairs because there was a disturbance. When he arrived, the police were already present. Respondent indicated that she was trying to leave with the child because he had informed her that someone named Barney had put his "peepee" on him. During this time, respondent fell onto the floor yelling and screaming and flailing her arms. The child was removed from the area because he was becoming upset. According to Knight, respondent had also phoned him on one occasion and told him that the petitioner could just keep the child. Knight also saw another visit terminated because of a disturbance caused by respondent. The allegations of sexual abuse within the foster home were investigated and there was no evidence to support them. Knight also recommended the termination of visitation because the visits seemed to traumatize the child.
The juvenile court, however, denied petitioner's motion to suspend visitation. Instead, the court ordered the child moved to a different foster home in light of the allegation of sexual abuse. Petitioner was ordered to help respondent find suitable housing; however, petitioner's attorney noted that respondent had been given several referrals for housing, yet continued to live in the unsuitable house because she did not want to move. Respondent admitted that she informed an employee of petitioner that her house needed repairs, that there were holes in the house, that the heater needed repairs in order to work, that there was fire damage to the roof, and that the refrigerator handle was broken. She also told the employee that she had emotional difficulties for which she had been treated and that she would kill herself if not allowed to take the child out of foster care. Following respondent's admission to the allegations in the petition, the juvenile court ordered the child placed in temporary foster care or with a suitable relative.
The case service plan provided that respondent was to maintain suitable housing, allow intensive in-house services, submit to an independent psychiatric evaluation, obtain a psychological evaluation of the child, including diagnosis of any developmental delays, and find suitable day care if she found employment. The child was ordered to remain under petitioner's supervision until further order, but was to be returned to respondent for an "extended visit" no later than June 1, 1997. A dispositional review hearing was set for September 1997. On or about June 1, 1997, the child returned to respondent's home for an extended visit, while remaining under petitioner's supervision.
At the dispositional review hearing, petitioner filed a motion to exercise its authority to immediately remove the child from respondent's home. The motion was based on respondent's alleged refusal to participate with in-home services, her refusal to have the child evaluated, and her refusal to continue with her therapy or prescribed medication. Respondent informed the court of everything she had done to comply with the plan, including obtaining work in return for day care for the child, medical evaluations for herself and the child, and partial compliance with in-home services. Respondent also noted that the child was doing very well in her care and was no longer developmentally delayed. The representation was also *171 made to the court that respondent was working at her church in return for day care for the child. The juvenile court denied petitioner's motion to remove the child from respondent's home.
On October 1, 1997, respondent requested an emergency temporary restraining order (TRO) to prevent petitioner from removing the child from her home. Respondent argued that the juvenile court should not only look at whether respondent had complied with the requirements set forth at the prior dispositional review hearing, but should also determine what was in the child's best interests before deciding whether the child should be removed from respondent's home. The juvenile court, however, declined to engage in a best interests analysis and, instead, heard testimony with regard to respondent's compliance with the case service plan.
After starting a hearing, the trial court denied petitioner's request to remove the child, indicating that respondent had offered enough evidence that she had attempted to comply with the case service plan. The court adjourned the hearing until October 6 and 10, 1997. At the continued hearing, the court again heard testimony regarding whether respondent had complied with the case service plan. Although the juvenile court ultimately determined that respondent's motion for a TRO was not properly before it, because it lacked authority to issue such an order, the court reviewed the evidence presented and found that respondent had not complied with the required services, and that the child was therefore at risk. Accordingly, the court issued a writ ordering the child to be removed from respondent's home. It is from this order that respondent now appeals.
This Court previously denied respondent's motion for peremptory reversal, but granted respondent's motion for immediate consideration.

I
Preliminarily, petitioner challenges the jurisdiction of this Court to decide this case, arguing that respondent should have proceeded by leave of this Court rather than by right. We disagree. The interpretation and application of court rules is a question of law, which we review de novo on appeal. McAuley v. General Motors Corp., 457 Mich. 513, 518, 578 N.W.2d 282 (1998); Cardinal Mooney High School v. Michigan High School Athletic Ass'n, 437 Mich. 75, 80, 467 N.W.2d 21 (1991). A court has subject-matter jurisdiction to hear a case if the law has given the court the authority to grant the relief requested by the parties. Altman v. Nelson, 197 Mich.App. 467, 472, 495 N.W.2d 826 (1992).
Appeals to this Court from proceedings in probate court are provided for in MCR 5.993, which provides as follows:
(A) The following orders are appealable to the Court of Appeals by right:
(1) an order of disposition placing a minor under the supervision of the court or removing the minor from his or her home,
(2) an order terminating parental rights, and
(3) any order required by law to be appealed to the Court of Appeals, and
(4) any final order.
(B) All orders not listed in subrule
(A) are appealable to the Court of Appeals by leave.
In this case, the original order of disposition was entered on May 22, 1997. In that order, the juvenile court decreed that respondent comply with certain requirements and that the child could be returned to her home for what was termed "an extended visit." The court emphasized that the child's presence in her home was contingent on her compliance with the plan requirements. A dispositional review hearing was conducted on September 15, 1997. At that hearing, petitioner requested that the child be removed from respondent's *172 home and returned to a foster home because respondent had failed to comply with the court-ordered requirements for keeping the child. The court denied petitioner's request, but, again, the court emphasized that the continuation of the extended home visit was contingent on respondent's compliance with the case service plan.
The hearing from which the order appealed from in this case arose was originally motioned by respondent, who sought a TRO to prevent petitioner from exercising its discretion to remove the child from her home. The court ultimately determined that it lacked authority to issue such an order, but, over the course of the hearings, treated the matter like an accelerated dispositional review hearing. MCR 5.973(B)(5); MCL 712A.19(4); MSA 27.3178(598.19)(4). Accordingly, we conclude that the order may be viewed as a supplemental or amended order of disposition. MCR 5.973(B)(7)(a)(ii); MCL 712A.19(1); MSA 27.3178(598.19(1). Therefore, we agree with respondent that this appeal is by right because, although petitioner retained supervision over the child, the child was physically residing in respondent's home at the time the juvenile court entered the supplemental dispositional order removing the child from the extended home visit.

II
Respondent argues that the juvenile court erred in determining that a hearing was not required if the child were removed from respondent's home because the child had been placed there for an "extended home visit." The minor child had been on an extended visit with respondent for approximately four months when the juvenile court decided to terminate the visitation. Although we agree with respondent that the court rules require a hearing before the juvenile court may issue an order terminating the extended visit, we conclude that the court conducted such a hearing before it issued the order removing the child from respondent's home.
MCR 5.973(E)(1) provides:
(1) General. If the child, over whom the court has retained jurisdiction, remains at home following the initial dispositional hearing or has otherwise returned home from foster care, the court must conduct a hearing before it may order the placement of the child.
Rules of statutory construction apply to court rules. McAuley, supra at 518, 578 N.W.2d 282. Every phrase or word of a court rule should be given its commonly accepted meaning; however, where a phrase or word is expressly defined, courts must apply it in accordance with that definition. Id.
In this case, the child was returned to respondent's home for an extended visit after the initial disposition. It is reasonable that such an arrangement fits within the phrase "or has otherwise returned home from foster care." MCR 5.973(E)(1). Thus, contrary to the juvenile court's opinion regarding this issue, a hearing was required before the child could be removed from respondent's home. However, respondent's argument that she was denied due process simply because the court reached this conclusion is without merit because a hearing resulting in the relevant supplemental dispositional order was held on October 1, 6, and 10 of 1997. Although the hearing was initiated by respondent, who was seeking a TRO to prevent petitioner from removing the child from her home, it resulted in a dispositional review hearing in which both sides presented evidence, and the court did not order termination of the extended visitation until after the hearing was conducted. This hearing fully complied with the requirements of MCR 5.973. See also M.C.L. § 712A.19(6), (7); MSA 27.3178(598.19)(6), (7). Accordingly, because the juvenile court conducted a proper hearing before allowing petitioner to remove the child from respondent's home, respondent's argument *173 that she was denied due process must fail.

III
Respondent next argues that the juvenile court erred in amending its dispositional order to end respondent's extended visitation of the child. Respondent first contends that the juvenile court erred in emphasizing the risk of harm to the child based on respondent's emotional problems and mental health. Relying on In re Hulbert, 186 Mich.App. 600, 465 N.W.2d 36 (1990), respondent claims that potential harm to the child because of respondent's emotional difficulties was too speculative to warrant separation of the family. In Hulbert, this Court reversed a termination order, holding that there was insufficient evidence of neglect to terminate the respondents' parental rights. The probate court mainly based its decision on the speculative opinions of three Department of Social Services psychologists that the "respondents' `borderline' mental conditions may render them unfit or `ineffective' parents." Hulbert, supra at 602, 465 N.W.2d 36 (emphasis in original). However, Hulbert is distinguishable, because it involves termination of parental rights, while this case involves the removal of the child from an extended home visit following an accelerated dispositional review hearing. Further, the juvenile court in this case terminated the extended home visit because respondent failed to comply with the conditions set forth in its original order of disposition, not because of respondent's alleged mental disorders and emotional problems.
Respondent next contends that the juvenile court erred in failing to consider evidence of the child's best interests before removing him from her home. Contrary to respondent's argument, however, the juvenile court is not required to consider such evidence when conducting a dispositional review hearing. Although this Court in In re JS & SM, 231 Mich.App. 92, 100, 585 N.W.2d 326 (1998), found that while the best interest factors delineated within the Child Custody Act, M.C.L. § 722.21 et seq.; MSA 25.312(1) et seq., may appropriately be considered by a probate court in a termination of parental rights proceeding, the probate court is not required to address the best interests factors of the Child Custody Act in determining whether a parent has shown that termination of parental rights is not in the "best interests" of a child under M.C.L. § 712A.19b(5); MSA 27.3178(598.19b)(5). JS & SM, supra at 102-103, 585 N.W.2d 326. Accordingly, the juvenile court in this case correctly rejected respondent's argument that it must consider those factors before it could terminate the extended home visit.
Respondent also contends that the juvenile court erred in refusing to allow her to present evidence of potential harm to the child if removed from her home, as well as evidence of how well she had cared for the child. However, respondent presented this evidence in the context of a "best interests" argument, which this Court has rejected in proceedings within the juvenile division of the probate court. Id. Also, a hearing was held on September 15, 1997, during which respondent presented evidence of potential harm to the child if he were removed from her care, as well as evidence of how well she had cared for the child. We presume that the juvenile court was aware of this evidence when the instant hearings began two weeks later. Furthermore, respondent also presented evidence during the hearing on October 1, 1997, regarding how well she cared for the child. This complies with the requirement of MCR 5.973(B)(5), which provides that the court shall consider any written or oral information concerning the child from the child's parent at a dispositional review hearing.
Further, the juvenile court appropriately focused on respondent's compliance, or lack thereof, with the case service plan when making its decision to terminate *174 the child's extended home visit with respondent. MCR 5.973(B), sets forth the objectives of a dispositional review hearing:
(1) General. The main objectives of a dispositional review hearing are:
(a) court review of the progress made to comply with any order of disposition and with the case service plan prepared pursuant to M.C.L. § 712A.18f; MSA 27.3178(598.18f); and
(b) court evaluation of the continued need and appropriateness for the child to be in foster care.

* * *
(6) Criteria.
(a) Review of case service plan. The court, in reviewing the progress toward compliance with the case service plan, must consider:
(i) the services provided or offered to the child and parent of the child;
(ii) whether the parent has benefited from the services provided or offered;
(iii) the extent of parental visitation, including a determination as to why visitation was not frequent or never occurred;
(iv) the extent to which the parent complied with each provision of the case service plan, prior court orders, and any agreement between the parent and the agency;
(v) likely harm to the child if the child continues to be separated from his or her parent, guardian, or custodian; and
(vi) likely harm to the child if the child is returned to his or her parent, guardian, or custodian.
(b) Progress Toward Return Home of the Child. The court must decide the extent of the progress made toward alleviating or mitigating conditions that caused the child to be, and to remain, in foster care.
Following the September 15, 1997, dispositional review hearing, the court informed respondent that the child would remain in her home only if she complied with the case service plan. The evidence reveals that respondent failed to do so. Moreover, as noted by petitioner, the Legislature has conferred broad authority on the juvenile court in fashioning dispositional orders. See In re Macomber, 436 Mich. 386, 393, 461 N.W.2d 671 (1990). An extended visit in respondent's home was a reasonable step in reuniting the child with respondent. However, upon respondent's demonstrated failure to comply with the case service plan, which was the only means the court had to make sure the child was safe within respondent's home, the juvenile court was permitted to amend the dispositional order to terminate the child's extended visit in respondent's home.

IV
Respondent next argues that the juvenile court erred in interpreting MCR 5.915(B)(1)(a) as allowing respondent to retain no more than one attorney. However, despite this Court's request to do so, respondent has failed to file with this Court the transcript of the hearing at which the juvenile court determined that she would be allowed only a single attorney. Therefore, this issue is waived. See People v. Anderson, 209 Mich.App. 527, 535, 531 N.W.2d 780 (1995); MCR 7.210(B)(1)(a).

V
Respondent next argues that the juvenile court erred in refusing to impose the sanction of excluding the testimony of the foster care worker assigned to oversee this case when she allegedly failed to produce her case file in accordance with a subpoena. See MCR 2.506(F). However, because respondent has failed to indicate how she was prejudiced by her alleged inability to see the case file before the hearing in question, we find it unnecessary to address whether the penalty provisions of MCR 2.506(F) are available to juvenile courts through MCR 5.901.

*175 VI
Respondent next argues that the minor child was denied the effective assistance of counsel. The right to counsel guaranteed by the United States and Michigan Constitutions, U.S. Const., Am. VI; Const. 1963, art. 1, § 20, is the right to effective assistance of counsel. People v. Pubrat, 451 Mich. 589, 594, 548 N.W.2d 595 (1996). The juvenile court is required to appoint an attorney for the child in child protective proceedings. MCL 712A.17c(7); MSA 27.3178(598.17c)(7). Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings. In re Simon, 171 Mich.App. 443, 447, 431 N.W.2d 71 (1988); In re Trowbridge, 155 Mich.App. 785, 786, 401 N.W.2d 65 (1986).
However, constitutional protections are generally personal and cannot be asserted vicariously, but rather only "`at the instance of one whose own protection was infringed.'" People v. Smith, 420 Mich. 1, 17, 360 N.W.2d 841 (1984), quoting Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. Fieger v. Comm'r of Ins., 174 Mich.App. 467, 471, 437 N.W.2d 271 (1988), citing Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Because the right to effective assistance of counsel is a constitutional one, it is personal to the child and respondent may not assert it on behalf of the child. Smith, supra; Fieger, supra. Accordingly, respondent lacks standing to challenge the effectiveness of the minor child's attorney.

VII
Respondent next argues that the juvenile court violated her First Amendment right to freely exercise her religion because it considered her religious beliefs and practices for the purpose of drawing impermissible inferences of mental instability and inability to parent. We disagree. We review de novo questions that implicate the constitution. Kuhn v. Secretary of State, 228 Mich.App. 319, 324, 579 N.W.2d 101 (1998).
The record reveals that the juvenile court did not base its decision to terminate the extended home visit on respondent's religious beliefs. Rather, when deciding to remove the child from respondent's home, the juvenile court reasoned that the child was at risk because respondent was not complying with the case service plan. Further, the portion of the proceedings relied on by respondent in support of her position that the juvenile court impermissibly considered her religious beliefs shows that respondent, not the court, injected the issue of religion into the proceedings to explain her erratic behavior. Therefore, the record does not support respondent's claim that the juvenile court improperly considered her religious beliefs when deciding to remove the child from her home.

VIII
Respondent finally argues that the cumulative error in the juvenile court proceedings resulted in the denial of her due process. However, as discussed herein, respondent's claims of error are without merit. Accordingly, respondent was not denied due process of law based on the cumulative effect of error in the proceedings.
Affirmed.