*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PETERS/BRINTON/MATHEWS, Minors.

UNPUBLISHED
May 2, 2024

No. 367069
Berrien Circuit Court
Family Division
LC No. 2023-000019-NA

In re N. BRINTON, Minor.

No. 367070
Berrien Circuit Court
Family Division
LC No. 2023-000019-NA

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal as of right the trial court's order of disposition. Shortly before this order was entered, the trial court, following an adjudication, found statutory grounds to take jurisdiction over the three minor children, KP, NB, and EJM, under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment) and (2) (unfit home environment due to neglect). Respondent-mother is a biological parent to all three children, while respondent-father is only NB's biological parent. In Docket No. 367069, respondent-mother argues that the trial court clearly erred by taking jurisdiction over the three children. In Docket No. 367070, respondent-father argues that (1) the trial court's findings were insufficient to support NB's placement in foster care and (2) NB's guardian ad litem (LGAL) rendered ineffective assistance. We affirm.

## I. BACKGROUND

The children were taken into protective custody by an order entered on February 28, 2023. The order stated that respondent-father had previously struck KP, giving her a black eye. He was

charged with domestic violence and a no-contact order was issued. On February 28, 2023, however, respondent-father was found hiding in the family home with respondent-mother's "knowledge and acquiescence." The order removed the children from respondents' home and placed them under the care and supervision of the DHHS.

The DHHS filed a lengthy petition the following day, March 1, 2023. A preliminary hearing took place that same day, but it had to be adjourned and was not concluded until March 13, 2023. On that date, the trial court authorized the petition.

The case eventually proceeded to an adjudication trial that took place over three days, concluding on June 22, 2023. The trial court signed an order of adjudication the following day in which it took jurisdiction over KP, NB, and EJM under MCL 712A.2(b)(1) and (2). During the adjudication trial, the court heard testimony from caseworkers with Children's Protective Services (CPS), respondent-mother, and KP. The trial court found KP to be a highly credible witness. KP testified that she was hit in the face and given a black eye by respondent-father, and that it was not the first time that he had hit her. She also testified to having gone several years without being in school and being placed in charge of her siblings' educational needs. KP estimated that the family had moved 72 times in the last nine years, and said that respondents would pack up and leave any time they had a run in with CPS or police. She also said that she and her siblings did not receive proper medical care.

At the end of the hearing, the trial court concluded that respondents had neglected the physical, emotional, mental, and educational needs of the children. The court found by a preponderance of the evidence that respondents engaged in "educational neglect" based on evidence that the children's schooling was left to KP; that respondents created an unfit home environment because of criminality or depravity because (1) KP was physically abused by respondent-father and (2) respondent-mother was aware of the abuse but did not do anything about it; and that respondents engaged in neglect by leaving KP to essentially parent the other children while knowing she suffered from mental health issues and did nothing about it. Relying on this same evidence, the court found that respondents failed to provide proper care or support to assure that the children's health and safety needs were being met. Based on testimony that the children had not been receiving consistent medical care, the court found that respondents had neglected the children's medical well-being. The trial court further found that returning the children to respondents' custody would present a substantial risk of harm to the children's health and well-being, and that no other services or arrangement would adequately safeguard the children from that risk of harm.

This appeal followed.

## II. DOCKET NO. 367069

In Docket No. 367069, respondent-mother argues that the trial court clearly erred by finding statutory grounds to take jurisdiction over the children because there was insufficient evidence to support a finding that either MCL 712A.2(b)(1) or (2) was satisfied. We disagree.

## A. STANDARD OF REVIEW

This Court reviews for clear error a trial court's decision to exercise jurisdiction. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

## B. ANALYSIS

To acquire jurisdiction, a trial court must find by a preponderance of the evidence that the child comes within the requirements of MCL 712A.2. *In re BZ*, 264 Mich App at 295. That statute provides in relevant part:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).]

Respondent-mother argues that these statutory grounds were not satisfied because there was no evidence that she failed to provide food, education, housing, or clothes for her children. Respondent-mother alternatively argues that the trial court did not consider that KP's black eye was a one-time incident, and that "there was no other abuse of any of the children."

Addressing the latter point first, the trial court heard testimony from KP that she was physically abused numerous times by respondent-father and that respondent-mother had told KP to lie to investigators about how she received her black eye. KP also testified that respondent-father abused EJM by punishing him harder than the other children because he was not respondent-father's biological child. This testimony effectively refutes respondent-mother's arguments that respondent-father only hit KP once and that there was no evidence that the other children were abused.

KP further testified that she had not attended school in several years, was tasked with educating her brothers, and occasionally had to ration food with her brothers whenever respondent-mother left town for multiple weeks and left the children in the care of respondent-father. There was additional evidence that respondent-mother put KP in danger by allowing respondent-father

to violate his no-contact order and return to the home shortly after he was charged with domestic violence for striking KP and giving her a black eye. The court also heard testimony about the children's vagabond lifestyle—according to KP, respondent-mother packed up the children and moved at least 72 times over the past nine years of KP's life. KP additionally testified that she had mental health problems and needed to see a therapist, but respondent-mother brushed it aside. KP elaborated that it was not just KP that respondent-mother medically neglected; KP said that respondent-mother had not been taking NB and EJM to regular doctor and dental appointments. KP guessed that NB had only seen a doctor once, and EJM might have never seen a doctor at all. KP further testified that her schooling was inadequate, and that she was also responsible for her siblings' education. This testimony refutes respondent-mother's contention that there was no evidence that she neglected the educational and medical needs of all three children. It further supports that there were even times when respondent-mother failed to provide sufficient food to meet the children's needs.

Not only does the evidence discussed above rebut respondent-mother's assertions that such evidence was not before the trial court, but the evidence provided a more-than-sufficient basis for the trial court to exercise jurisdiction over the three minor children under both MCL 712A.2(b)(1) and (2). The court accordingly did not clearly err by taking jurisdiction over KP, NB, and EJM.

## III. DOCKET NO. 367070

In Docket No. 367070, respondent-father raises two arguments. First, he contends that the trial court did not make sufficient factual findings to place NB into foster care. Second, he argues that NB's LGAL did not provide NB effective assistance of counsel. We take each argument in turn.

## A. REMOVAL

Respondent-father argues that, in its order following the preliminary hearing, the trial court did not make sufficient findings under MCL 712A.13a(9) and MCR 3.965(C)(2) to justify placing NB in foster care. We disagree.

Under MCL 712A.13a(9) and MCR 3.965(C)(2), which are nearly identical, a trial court can order that a child be placed in foster care if the following conditions are met:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

-4-

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9).]

Respondent-father argues that the trial court did not make any findings under Subsection (a) because it supposedly "focused its factual determinations solely on [KP]"; did not make adequate findings under Subsection (b) because it did not consider whether options besides removal were available to protect NB; did not "consider whether any efforts had been made to keep [NB] in the home"; and did not make adequate findings under Subsection (e), particularly because the court failed to consider the potential negative effects of removing NB from his care. Respondent-father is wrong on all counts.

At the conclusion of the preliminary hearing, the trial court placed a number of factual findings on the record that respondent-father does not contest on appeal. The trial court found that respondent-father struck KP and was charged with domestic violence for that conduct. The court found that KP was "primarily responsible for the care and upkeep of" NB and EJM. It found that NB had not attended school in several years, that his schooling was left to KP, and that the combination of these facts amounted to "educational neglect." The court found that respondents were constantly moving from place to place, subjecting the children to a "transient . . . lifestyle," which in turn contributed to the children's educational deficiencies. The court recognized a request by respondents to place the children with respondent-mother "with certain conditions" but rejected that request because respondent-father "was already subject to those conditions" and violated them. Respondent-father was previously subject to a no-contact order, the court explained, which respondent-father violated "with the permission of [respondent-mother]." The court also found that reasonable efforts were made, which included an investigation by the DHHS, "police investigation, attempted interview of the children, and safety planning." The court opined that it would be contrary to the welfare of all the children to remain in a placement with either respondent due to respondent-father's "ongoing criminality" and the accompanying acquiescence of respondent-mother. In a written order following the hearing, the trial court opined that additional efforts made by the DHHS to prevent removal included CPS interviews with respondents and the maternal grandmother, as well as "[c]riminal history checks." That same order required the DHHS to provide any services to the foster parents that may be necessary to provide for the children's care, as well as to provide any service to the children that may be "necessary and appropriate."

The trial court's findings on the record and in its order following the preliminary hearing plainly satisfy the requirements of MCL 712A.13a(9) and MCR 3.965(C)(2). Contrary to respondent-father's argument with respect to Subsection (a), the court did not focus its factual findings solely on KP but discussed how all three children were subjected to "educational neglect." The court also noted that NB was neglected because respondents left KP primarily responsible for NB's "care and upkeep." Under Subsection (b), the court plainly considered alternative placements, again contrary to respondent-father's argument. The court specifically acknowledged respondents' request to place NB with respondent-mother "with certain conditions," but it rejected this option, reasoning that respondents had already proven unwilling or unable to adhere to such restrictions. Respondent-father's contention that the trial court failed to consider whether reasonable efforts had been made to prevent NB's removal is likewise contradicted by the record. In both its findings on the record at the hearing and in its written order following the hearing, the court described the reasonable efforts that had been made to prevent removal. Finally, with respect to Subsection (e), the court in its written order ensured that NB's placement away from respondent

would adequately safeguard his health and welfare by requiring the DHHS to provide any "services to the foster parent(s) that are necessary and appropriate" for NB's care, as well as any services to NB that may be "necessary and appropriate." These findings were more than sufficient to facilitate appellate review of the factors enumerated in MCL 712A.13a(9) and MCR 3.965(C)(2). See *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020). Having reviewed the properly-created record, we discern no error in the trial court's decision to place NB in foster care.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent-father next argues that this Court should abandon precedent and rule that respondent-parents have standing to challenge the effectiveness of a child's attorney. We decline respondent-father's request.

Respondent-father wishes to argue that NB's court-appointed LGAL provided ineffective assistance. This Court addressed a similar argument in *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009), explaining that a respondent-parent does not have standing to challenge the effectiveness of a child's counsel. This Court reasoned as follows:

> It is true that children have a right to appointed counsel in child protective proceedings, MCL 712A.17c(7), and that a child's attorney appointed under the juvenile code "has the same duties that any other client's attorney would fulfill when necessary." *In re AMB*, 248 Mich App 144, 224; 640 NW2d 262 (2001). In addition, although child protective proceedings are not criminal in nature, where the right to effective counsel arises from the Sixth Amendment, the Due Process Clause indirectly guarantees effective assistance of counsel in the context of child protective proceedings. *In re C.R.*, 250 Mich App 185, 197-198; 646 N.W.2d 506 (2002).

> Respondents' argument, however, wrongly assumes that they have standing to challenge the alleged violation of [the child's] constitutional rights. Generally, persons do not have standing to assert constitutional or statutory rights on behalf of another person. *People v Wood*, 447 Mich 80, 89; 523 NW2d 477 (1994). And, this Court has held that a respondent in a child protective proceeding lacks standing to challenge the effectiveness of the child's attorney. As this Court stated in *In re E.P.*, 234 Mich App 582, 598; 595 N.W.2d 167 (1999), overruled on other grounds 462 Mich 341; 612 NW2d 407 (2000):

>> [C]onstitutional protections are generally personal and cannot be asserted vicariously, but rather only " 'at the instance of one whose own protection was infringed.' " A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. Because the right to effective assistance of counsel is a constitutional one, it is personal to the child and respondent may not assert it on behalf of the child. [Citations omitted.]

Accordingly, because respondents do not have standing to challenge the effectiveness of [the child's] counsel, we decline to address the merits of this argument.

Like the respondent in *In re HRC*, respondent-father lacks standing to challenge the effectiveness of NB's counsel, so we decline to address the merits of this argument.[1]

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien

---

[1] We also briefly note that, even if we could consider the merits of respondent-father's claim, he would still be responsible for establishing the factual predicate of his ineffective-assistance claim, see *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), which he plainly has not done. Respondent-father contends that, had the LGAL performed certain duties, then a different outcome was probable. But respondent-father concedes that "[i]t is unclear" whether the LGAL performed those duties, thus failing to establish the factual predicate of his claim.