*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Conservatorship of EJS.

JONATHAN SAMUELS, Conservator of EJS, a legally protected individual,

Appellant,

v

AMY KRAYDICH,

Appellee,

and

ELS, EMILY SAMUELS, and THOMAS BRENNAN FRASER,

Other Parties.

UNPUBLISHED
June 22, 2026
10:54 AM

No. 366193
Oakland Probate Court
LC No. 2021-400072-CA

*In re* Conservatorship of ELS.

JONATHAN SAMUELS, Conservator of ELS, a legally protected individual,

Appellant,

v

AMY KRAYDICH,

Appellee,

and

No. 366194
Oakland Probate Court
LC No. 2021-400070-CA

EJS and EMILY SAMUELS,

        Other Parties.

---

*In re* Guardianship of EJS.

---

JONATHAN SAMUELS, Guardian of EJS, a legally
protected individual,

        Petitioner-Appellant,

v

EMILY SAMUELS,

        Respondent-Appellee,
and

ELS,

        Other Party.

No.  368675
Oakland Probate Court
LC No.  2021-400071-GA

---

*In re* Conservatorship of ELS.

---

JONATHAN SAMUELS, Conservator of ELS, a
legally protected individual,

        Petitioner-Appellant,

v

EMILY SAMUELS,

        Respondent-Appellee,
and

EJS and AMY KRAYDICH,

No.  368676
Oakland Probate Court
LC No.  2021-400070-CA

---

Other Parties.

---

*In re* Conservatorship of EJS.

---

JONATHAN SAMUELS, Conservator of EJS, a
legally protected individual,

      Petitioner-Appellant,

v

EMILY SAMUELS,

      Respondent-Appellee,
and

AMY KRAYDICH,

      Other Party.

No.   368677; 368679
Oakland Probate Court
LC No.   2021-400072-CA

---

*In re* Conservatorship of ELS.

---

JONATHAN SAMUELS, Conservator of ELS, a
legally protected individual,

      Appellant,

v

EMILY SAMUELS,

      Appellee,
and

EJS and AMY KRAYDICH,

      Other Parties.

No.   371489
Oakland Probate Court
LC No.   2021-400070-CA

---

*In re* Conservatorship of EJS.

JONATHAN SAMUELS, Conservator of EJS, a
legally protected individual,

      Appellant,

v

EMILY SAMUELS,

      Appellee,

and

AMY KRAYDICH,

      Other Party.

No.  371490
Oakland Probate Court
LC No.  2021-400072-CA

Before:  MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In these consolidated appeals by right (Docket Nos. 366193, 366194, 368675, 368676, 368677, and 368679) and appeals by delayed leave granted (Docket Nos. 371489 and 371490),[1] appellant, Jonathan Samuels, challenges multiple orders affecting the conservatorships of his mother and father, and the guardianship of his father.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

These appeals are rooted in a brother and sister's bitter division over the care of their elderly (and now-deceased) parents—ELS (their mother) and EJS (their father).  In May 2021, Jonathan's sister, Emily Samuels, petitioned the probate court for conservatorship and guardianship as to both parents.  Shortly thereafter, Emily was appointed as ELS's guardian, and Jonathan was appointed as EJS's guardian and as both parents' conservator.  This arrangement caused EJS and ELS to live separately during the relevant period of the proceedings.

---

[1] *In re Conservatorship of ELS*, unpublished order of the Court of Appeals, entered December 9, 2024 (Docket Nos. 371489; 371490; 368675; 368676; 368677; 368679; 366193; 366194).

-4-

In July 2022, the guardian ad litem (GAL) for EJS and ELS petitioned to remove Jonathan as his parents' conservator, citing concerns regarding Jonathan's failure to adequately maintain his parents' real property, including their marital home and investment properties. Pursuant to the parties' stipulation, in October 2022, the probate court appointed Amy Kraydich as special fiduciary to manage the parents' real property. According to Kraydich, she thereafter spent several months attempting to manage and improve the property, but her efforts were significantly hindered by the excessive clutter and personal possessions that Jonathan had accumulated and stored there, as well as by Jonathan's general unwillingness to cooperate with her.

In February 2023, Kraydich filed an emergency petition to modify the conservatorships, citing Jonathan's consistent unwillingness to cooperate and the significant difficulties managing his parents' real property that she faced as a result. Following a hearing on the petition and consideration of photos reflecting the property's condition, the probate court removed Jonathan as conservator for both parents and appointed Kraydich as their successor conservator.

After assuming duties as conservator, Kraydich, among other things, filed an emergency petition to address Jonathan's alleged mismanagement of EJS's estate and to freeze financial accounts subject to that alleged mismanagement.[2] According to Kraydich, she discovered that, approximately one month before he was removed as conservator, Jonathan had transferred $175,000 from a Roth IRA in EJS's name to an investment account jointly owned by Jonathan and ELS, and even though Jonathan was no longer conservator, he still retained control over—and therefore still had access to—the funds in that account. Kraydich asked the probate court to freeze the account so that Jonathan could not access the funds and to direct the bank to turn over the funds to her as the successor conservator. After conducting a hearing on the petition and other matters in August 2023, the court ordered that the $175,000 be transferred to Kraydich, that Jonathan be removed as the sole beneficiary of EJS's Roth IRA, and that the remaining money in the Roth IRA be held in trust and used solely for the parents' individual needs as determined by Kraydich.

In addition, the probate court, after removing Jonathan as conservator, repeatedly ordered him to file accounts for the period of time he acted as his parents' conservator, as well as for all money of theirs that he continued to handle even after (and despite) his removal as conservator. Jonathan never did so, and the court subsequently sanctioned him $250 for failing to file the accounts. Jonathan did eventually provide to the other parties' attorneys, but not to the court, accounts for the periods of August 25, 2021 to August 24, 2022, and August 25, 2022 to February 21, 2023. Emily and Kraydich filed objections to the accounts with the court, including in their filings the copies of the accounts that they had received from Jonathan. In November 2023, following a contested hearing on the matter, the court disallowed the accounts. The court also denied Jonathan's request to be reimbursed by his parents' estate for loans that he had previously

---

[2] Kraydich also separately filed a petition to set aside portions of the parties' December 2022 stipulated order to allow her to more easily manage the parents' real property, as well as a petition to compel Jonathan to file accounts related to his time as his parents' conservator.

made to them—which, according to Jonathan, amounted to more than $250,000—finding that Jonathan failed to provide sufficient documentation in support of his claim.[3]

These appeals followed.

## II. STANDARDS OF REVIEW

In general, we review a probate court's decisions for abuse of discretion and its underlying finding of fact for clear error. *In re Huntington Estate*, 339 Mich App 8, 17; 981 NW2d 72 (2021). Factual findings are clearly erroneous when we are definitely and firmly convinced that the probate court made a mistake. *Id*. The probate court abuses its discretion when it makes an error of law or otherwise renders a decision outside the range of principled outcomes. *Id*. "We defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Murray Conservatorship*, 336 Mich App 234, 240; 970 NW2d 372 (2021) (quotation marks and citation omitted). We review de novo questions of law, including the interpretation and application of court rules, *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 398; 872 NW2d 223 (2015), and whether an issue is moot, *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018).

## III. REMOVAL AS CONSERVATOR

On appeal, Jonathan first raises several challenges the probate court's February 2023 orders removing him as conservator for his parents. As noted by Kraydich in her responsive briefing, however, EJS and ELS have both passed away since the inception of these appeals, thereby ending their guardianships and conservatorships. See MCL 700.5308; MCL 700.5426(4). Furthermore, by prior stipulation of the parties—which remains intact and unchallenged on appeal—the parents' estates are to be administered upon their deaths by appointed personal representatives. Accordingly, we agree with Kraydich that the parents' deaths have rendered moot Jonathan's various challenges to whether the court erred by not allowing him to continue as his parents' conservator. See *Garrett v Washington*, 314 Mich App 436, 450; 886 NW2d 762 (2016) ("An issue becomes moot when a subsequent event renders it impossible for the appellate court to fashion a remedy.") (quotation marks and citation omitted).

Jonathan argues that these issues are not moot because the probate court's orders "continue to operate as binding factual and legal determinations" and that, even if the issues were moot, they

---

[3] Jonathan also filed multiple motions for reconsideration throughout the proceedings, including motions regarding the court's February 2023 order removing him as his parents' conservator; the court's August 2023 order setting aside the parties' December 2022 stipulated order governing the parents' real property; the court's August 2023 orders removing him as the sole beneficiary of EJS's Roth IRA; and the court's November 2023 order disallowing his accounts, denying his requested repayment, and requiring him to pay the $250 sanction amount that he had failed to pay. The court denied all of the motions, finding each time that Jonathan presented the same issues already ruled on by the court or based his motion on evidence that he could have presented at the hearing previously held to address the issue.

should still be considered because they are "capable of repetition yet evading review" and are "of public significance and likely to recur." See *In re Detmer/Beaudry*, 321 Mich App 49, 56; 910 NW2d 318 (2017) (stating that this Court may address the merits of a moot issue if it is one "of public significance" and results from "disputes . . . likely to recur, yet evade judicial review"). Jonathan, however, has not demonstrated how the court's orders removing him as conservator may have impeded his claimed entitlement to reimbursement from the estates, prejudiced him with respect to any other aspect of his rights as an heir to his parents' estates, or otherwise caused him ongoing, cognizable harm. Nor has Jonathan identified any aspect of this controversy that is of public significance or could be a recurring issue in other, future proceedings. The record instead demonstrates that the petition for Jonathan's removal as conservator was premised on factual circumstances specific to this case. And while Jonathan claims the probate court was biased against him, the probate judge who presided over the proceedings below has since retired and his parents' estate proceedings have been assigned to a different judge.[4] Accordingly, we fail to see how Jonathan's challenges to his removal as conservator are not moot or why we should nonetheless reach their merits.

## IV. FALSE TESTIMONY

Jonathan next asserts that Kraydich's attorney was permitted to present false testimony at the August 2023 hearing. Despite his labeling of this issue, it is clear from the substance of Jonathan's appellate brief that he is arguing that the probate court erred by believing the testimony of Kraydich and a real estate broker regarding the condition of his parents' real property. During the proceedings below, however, Jonathan had the opportunity to—and did—cross-examine these witnesses and present his own testimony regarding the condition of the property. The probate court simply found the other witnesses' testimony to be more credible, particularly in light of the

---

[4] Some of Jonathan's challenges to his removal as conservator are also raised as to other aspects of the proceedings below—namely, that the probate judge was biased against him, and that ELS did not have adequate representation. While his parents' death has mooted these claims with respect to the conservatorship aspect of the proceedings, it has not necessarily done so with respect to the other aspects of the proceedings that Jonathan challenges. But we see no merit in these claims. Jonathan's claims of judicial bias are cursory and conclusory, and neither they nor our review of the record reveal anything that might be sufficient to overcome the governing "strong presumption of judicial impartiality[.]" *People v Loew*, 514 Mich 158, 186; 22 NW3d 323 (2024); see also *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012) ("A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption."). And as to ELS's representation, it is not apparent how Jonathan may have standing to raise this issue on his mother's behalf. Cf., e.g., *In re EP*, 234 Mich App 582, 598; 595 NW2d 167 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000) (holding that a respondent-parent lacked standing to raise a constitutional ineffective-assistance claim on behalf of her minor child). Furthermore, the record reflects—and Jonathan does not dispute—that ELS, consistent with MCL 700.5406, was appointed a GAL to protect her interests and was represented by a GAL throughout the proceedings below. Jonathan clearly does not agree with the GAL's decisions in representing ELS, but he has failed to show how that representation might have been actionably inadequate.

submitted photos demonstrating the property's poor condition. As discussed, we defer to the probate court's credibility findings and determinations, and Jonathan has given us no reason to disturb those findings on appeal. See *Murray Conservatorship*, 336 Mich App at 240. Accordingly, Jonathan has not shown entitlement to relief on this issue.

## V. ROTH IRA

Jonathan next challenges the probate court's orders issued after the August 2023 hearing—specifically, the portion of the orders concerning EJS's Roth IRA.[5] According to Jonathan, the court erred by removing him as the sole beneficiary of EJS's Roth IRA because EJS designated him as the sole beneficiary of that account in 2016, before he became EJS's conservator. Jonathan states in his appellate brief that he and Kraydich met on August 21, 2023, at which time she told him "that she had investigated the Roth IRA beneficiary designation with [Charles] Schwab, and verified that there was no change since 2016[.]" Nothing in the record before us, however, substantiates this claim. Rather, the record reflects only that Jonathan, a month before he was removed as conservator, moved $175,000 from EJS's Roth IRA to an investment account he and ELS jointly owned; that the Roth IRA listed Jonathan as the sole beneficiary; and that no reliable information regarding when beneficiary designations for the Roth IRA were made or changed had been provided by Jonathan or the financial institution.

In any event, Jonathan, as a conservator, was required to "act as a fiduciary and observe the standard of care applicable to a trustee." MCL 700.5416; see also MCL 700.1104(e). And as a fiduciary, Jonathan was, among other things, statutorily prohibited from engaging in self-dealing. *In re Cummin Estate*, 474 Mich 1117, 1117; 712 NW2d 447 (2006), citing MCL 700.1214. This prohibition includes "personally deriv[ing] a profit from the . . . transfer of the estate's property." MCL 700.1214. If made aware of such behavior, the probate court is authorized under MCL 700.1308 "to determine and remedy" it. *Murray Conservatorship*, 336 Mich App at 244; see also MCL 700.1308(1)(i) (providing that one such remedy available is to "void an act of the fiduciary"). Correspondingly, any of Jonathan's self-dealing transactions as conservator were "voidable" unless the transaction was approved by the court, "involve[d] a contract entered into or claim acquired by the conservator before the person became or contemplated becoming conservator," or "[wa]s otherwise permitted by statute." MCL 700.5421(1).

---

[5] The record reflects that there were two Roth IRAs belonging to EJS discussed at the August 2023 hearing: one at Charles Schwab that was created years before Jonathan was appointed as his parents' conservator, and another at a credit union that was established in March 2023 after Jonathan was removed as conservator (and unbeknownst to Kraydich, even though she was acting as the parents' conservator at the time). Because the Roth IRA at the credit union was not discovered by Kraydich until two days before the hearing, the parties (and the probate court's orders) focused on the Charles Schwab Roth IRA. Additionally, because the parties focus their appellate arguments on the Charles Schwab Roth IRA and none of them raise any challenge regarding the Roth IRA at the credit union, we likewise focus our discussion on the Charles Schwab Roth IRA and refer to it simply as the "Roth IRA."

The probate court's August 24, 2023 order provided, "Any change of beneficiary designations by Jonathan Samuels, during the time that he was acting as fiduciary, that benefitted him shall be set aside as impermissible self-dealing." Contrary to Jonathan's assertion on appeal, this order was contingent on whether Jonathan changed beneficiary designations "during the time he was acting as fiduciary," and the order thus did not change any alleged beneficiary designation made before his appointment as EJS's conservator in August 2021. Rather, consistent with MCL 700.1214 and MCL 700.1308(1)(i), the court's order remedied any potential self-dealing by voiding any beneficiary designations changed by Jonathan to himself during his time as EJS's conservator. Further, Jonathan does not identify, nor do we see, a basis to conclude that any such act was exempt from voidability under MCL 700.5421(1). We therefore see no reversible error as to this order. See *Huntington Estate*, 339 Mich App at 17.

Regarding the probate court's August 28, 2023 order, it provided, "The beneficiary designation for the Roth IRA shall be null and void pending transfer of the account in trust to Ms. Kraydich[.]" Unlike the August 24, 2023 order, this order was not contingent on the date that the beneficiary designation was changed and therefore could have affected a beneficiary designation made by EJS prior to Jonathan's appointment as conservator. Regardless of whether there was firm proof that Jonathan made the beneficiary designation for his own advantage, the probate court was authorized under MCL 700.5407(3) to change a beneficiary designation made prior to Jonathan's time as EJS's conservator. MCL 700.5407(3) provides that the court, after notice and a hearing, may—or may direct a conservator to—"change a beneficiary under an insurance and annuity policy" once the court is satisfied "that it is in the protected individual's best interests and that the individual either is incapable of consenting or has consented to the proposed exercise of th[is] power[.]" Here, notice was provided and a hearing on the matter was conducted. At the hearing, EJS indicated through his attorney that he wanted his assets, including the money contained in his Roth IRA, to be used for ELS's benefit. Additionally, the court found that changing the beneficiary designation of EJS's Roth IRA was in both EJS's and ELS's best interests because they "need[ed] to have the assets available to one another so that they c[ould] be cared for throughout their lifetime." It is clear from the record that the court rendered its decision after it was satisfied that changing the beneficiary designation was in EJS's best interests and was consistent with EJS's express wish that his assets be used for ELS's benefit. See MCL 700.5407(3). We therefore see no reversible error as to this order, either. See *Huntington Estate*, 339 Mich App at 17.

## VI. MCR 5.203

Jonathan next argues that the probate court erred by disallowing his accounts, and thereby imposing an extreme financial sanction, without first adhering to the procedures set forth in MCR 5.203. This court rule, however, sets forth procedures for when "it appears to the court that the fiduciary is not properly administering the estate[.]" MCR 5.203. In other words, this rule applies only when the court becomes aware that the *current* fiduciary is not fulfilling his or her fiduciary duties; it does not purport to apply when a *former* fiduciary fails to comply with a specific court order to submit accounts reflecting financial activity during his or her time as a fiduciary. Here, the probate court did not disallow Jonathan's accounts or otherwise impose a sanction on him until well after he was removed as his parents' conservator. The record also reflects that the court disallowed the accounts not as a sanction, but because the accounts were never filed with the court as statutorily required, see MCL 700.5418(1), and because the copies of the accounts given to

other parties were wholly inadequate. The only sanction the court imposed in this case was a $250 sanction for Jonathan's repeated failure to file the accounts in accordance with the court's prior orders after he was removed as conservator. Accordingly, we see no error warranting relief as to this issue. See *Huntington Estate*, 339 Mich App at 17; *Arabo*, 310 Mich App at 398.

## VII. REIMBURSEMENT OF FUNDS

Jonathan next argues that the probate court erred by denying his claim for reimbursement of more than $250,000 that he claimed to have loaned to his parents or expended for their benefit while acting as their conservator. Jonathan asserts that, pursuant to MCL 700.5423(2)(t), he was permitted to advance money to his parents' estates while acting as conservator, and he was therefore entitled to recoup that money after he was removed as their conservator. Jonathan, however, never submitted accounts or his claim for reimbursement to the probate court as required by statute. See *Murray Conservatorship*, 336 Mich App at 244, citing MCL 700.5418(1) (noting that a conservator is required to provide an account to the court and a copy of that "accounting to the protected individual and to interested persons" even after he or she is removed as the conservator). Rather, Jonathan only provided a copy of the accounts to the other parties, despite being repeatedly ordered by the court to file the accounts and any reimbursement requests with the court. Moreover, the documentation he submitted to the other parties was unclear, demonstrated inappropriate commingling of Jonathan's personal funds with his parents' funds, and raised several questions regarding the purpose of the expenses and the source of Jonathan's funds. And Jonathan, for his part, does not explain on appeal how the probate court clearly erred by reaching this conclusion after reviewing the accounts and holding a hearing to address them. Accordingly, we see no error warranting relief as to this issue. See *Huntington Estate*, 339 Mich App at 17.[6]

## VIII. DELAYED MAILING OF ORDER DENYING MOTION FOR RECONSIDERATION

Finally, Jonathan argues that the probate court's delay in mailing the order denying his motion for reconsideration of the court's August 2023 orders constituted reversible error. Any such error in this regard, however, was harmless. See MCR 2.613(A). The only possible harm from the delayed mailing that Jonathan identifies is that it impeded his ability to timely file an

---

[6] Relatedly, Jonathan also argues that the denial of his reimbursement claim functioned as an excessive and punitive financial sanction in violation of the federal and Michigan constitutions. See US Const, Am VIII; Const 1963, art 1, § 16. But beyond this conclusory statement, he fails to provide any legal or factual support for his position, leaving it improperly presented for this Court's review. See *Henderson v Dep't of Treasury*, 307 Mich App 1, 23-24; 858 NW2d 733 (2014). We note, however, that we do not see apparent merit in this claim. As discussed, the record demonstrates that the probate court denied Jonathan's accounts and reimbursement claim because he failed to submit them to the court for due consideration and because the accounts provided to the other parties—who, in turn, provided the accounts to the court when filing objections to them—were deficient. Furthermore, the court did not deny reimbursement with prejudice or otherwise preclude Jonathan from properly submitting his claim to the court with sufficient documentation; he simply never did so.

appeal under MCR 7.204(A)(1). But Jonathan filed an application for delayed leave to appeal which this Court ultimately granted, thereby obviating this claimed harm.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel