*In re* HAMLET (AFTER REMAND)

Docket No. 198096. Submitted September 10, 1997, at Lansing. Decided September 26, 1997, at 9:00 A.M.

The Department of Social Services petitioned the Livingston County Probate Court for termination of the parental rights of Gary and Kimberly Sue Hamlet to Brittany Hamlet on the grounds of abuse, neglect, and abandonment. The court, Susan L. Reck, J., terminated the parental rights of both parents. Each parent appealed, and the appeals were consolidated. The Court of Appeals, MARILYN KELLY, P.J., and SHEPHERD and CONNOR, JJ., reversed the probate court's decision with respect to Gary Hamlet on the basis of the court's failure to secure his physical presence at the termination hearing, held that the probate court erred in finding that there was clear and convincing evidence to support the conclusion that the parents' parental rights should be terminated by reason of their inability to provide care and custody of the child within a reasonable time, and remanded the matter to the probate court. Unpublished opinion per curiam of the Court of Appeals, issued July 23, 1993 (Docket Nos. 148996, 150137). On remand, the petition was amended to include a request to terminate the parental rights of both parents to Kevin Hamlet, who had been born during the pendency of the appeal of the prior order of the probate court. Kimberly Sue Hamlet released her parental rights to the children. At the time of the termination hearing on remand, Gary Hamlet (hereinafter respondent) was in jail for parole violation and was facing criminal charges in three different counties. Evidence at the termination hearings showed that the respondent has been in jail for most of the lives of his children and that he had showed very poor parenting skills and very little willingness to cooperate in programs that would have improved his parenting skills. Many of the expert witnesses who presented evidence at the termination hearing on remand expressed the belief that the respondent's parental rights should be terminated, some basing their belief on the need to provide a stable home environment for the children and others basing their belief on the fact that the respondent would not be able to acquire the necessary parenting skills within a reasonable time. The probate court again terminated the respondent's parental rights, finding that because the respondent had in the past failed to

provide the children with proper care and custody and appeared to be unable to provide such care in the foreseeable future, and because the children had a present need of a permanent family situation, the respondent would not be able to provide proper care and custody of the children within a reasonable time considering the ages of the children. The respondent appealed.

The Court of Appeals *held*:

1. MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) provides that a probate court may terminate the rights of a parent to a child where it finds clear and convincing evidence that the parent, without regard to intent, fails to provide proper care or custody of the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the ages of the children. Although there is some evidence that the respondent attempted to provide proper care and custody given his situation, there is clear and convincing evidence on the record that the respondent did not provide proper care and custody and that there was little likelihood that he would be able to provide proper care and custody within a reasonable time considering the ages of the children. The probate court did not err in finding that the statutory grounds for termination of the respondent's parental rights had been met by clear and convincing evidence on the record.

2. The respondent's assertion that the probate court's decision to terminate his rights was erroneous because the court gave too little weight to the reports and testimony of witnesses that indicated that it would be difficult to predict the respondent's potential to parent until the respondent was out of prison misapprehends the import of the evidence provided by those witnesses. Because both of those witnesses indicated that the respondent would need long-term counseling before the respondent could be expected to be able to acquire the proper parenting skills, the reports and testimony of those witnesses lends support to the court's finding that the respondent would not be able to provide a proper and stable home for the children within a reasonable time.

3. Because there was sufficient evidence establishing the statutory grounds for termination of parental rights, even if it were found that one of the expert witnesses reached a conclusion concerning the respondent's personality type as the result of using an inappropriate psychological test, the probate court's decision to terminate the respondent's parental rights need not be set aside on the basis of the challenged testimony.

4. It was not error for the probate court to incorporate by reference in its opinion on remand its finding in the prior order. The

Court of Appeals in its prior opinion did not find fault with the probate court's findings of fact, but rather reversed on a procedural ground and on the basis that the conclusion that the statutory grounds for termination of parental rights had been established by the facts found by the court. In any event, all the facts elicited during the prior hearing were also elicited during the hearing on remand.

5. Although the respondent is correct in asserting that it is inappropriate to weigh the advantages of a foster home against the home of the natural and legal parents, the assertion is inapposite in that the probate court's decision was clearly based on the respondent's statutory fitness as a parent.

6. The record fails to support the respondent's claim that the probate court erred in refusing to allow the respondent to reopen the proofs. Respondent's proffered evidence was insufficient to cause the probate court to reconsider its decision to terminate the respondent's parental rights.

7. MCL 712A.19b(5); MSA 27.3178(598.19b)(5), which provides that a probate court must terminate parental rights if it finds that the statutory grounds for termination of rights have been established unless the probate court finds that the termination of parental rights would not be in the child's best interests, does not unconstitutionally shift the burden of proof to the parents. The burden of proof to show by clear and convincing evidence that the statutory grounds for termination have been met remains with the petitioner. Once the burden of establishing the statutory grounds for termination has been met by the petitioner, termination is mandatory unless a parent sustains the burden of going forward with evidence that the termination of parental rights is not in the child's best interests.

8. There was no evidence that the termination of the respondent's parental rights was not in the best interests of the children.

9. The record fails to establish that the probate judge should have disqualified herself from hearing this matter on remand. The record fails to show any actual bias or prejudice on the part of the probate judge that would overcome the presumption of judicial impartiality.

Affirmed.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

The provision in the Judicature Act that a probate court must terminate parental rights if it finds the statutory grounds for such termination of rights have been shown unless the court finds that the termination of parental rights would not be in the child's best inter-

ests does not unconstitutionally shift the burden of proof from the petitioner to the respondent; the burden of proof to show by clear and convincing evidence that the statutory grounds for termination have been met remains with the petitioner; once the burden of proof of establishing the statutory grounds for termination has been met by the petitioner, termination is mandatory unless a parent sustains the burden of going forward with evidence that the termination of parental rights is not in the child's best interests (MCL 712A.19b[5]; MSA 27.3178[598.19b][5]).

*David L. Morse*, Prosecuting Attorney and *Marilyn S. Bradford*, Assistant Prosecutor, for the Department of Social Services.

*William Lansat*, for Gary Hamlet.

AFTER REMAND

Before: SAWYER, P.J., and HOOD and HOEKSTRA, JJ.

PER CURIAM. Gary Hamlet (hereinafter respondent) appeals as of right from the order terminating his parental rights to his two minor children, Brittany, born July 11, 1990, and Kevin, born December 14, 1992, pursuant to MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) (neglect). We affirm.

This 1991 case returns to this Court after remand. The original petition concerning Brittany was filed on April 25, 1991, and was based on abuse, neglect, and abandonment by the parents. On October 11, 1991, the probate court terminated the parental rights of respondent and his wife, Kim Hamlet, pursuant to MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g). On July 23, 1993, this Court reversed the probate court's decision with respect to respondent on the basis that the probate court committed error requiring reversal by not securing respondent's physical presence at the termination hearing as required by due process. (It

appears that respondent was in the Oakland County Jail at the time of the hearing, and that his whereabouts were not "unknown" as had been represented to the court.) *In re Hamlet*, unpublished opinion per curiam of the Court of Appeals, issued July 23, 1993 (Docket Nos. 148996, 150137). The panel also found that the probate court clearly erred in finding that there was clear and convincing evidence to support the termination of the parents' parental rights. The mother of the children has since released her parental rights to the children.

On remand, the probate court primarily focused on the period since this Court reversed the original decision to terminate the parental rights to Brittany (Kevin having been born in the interim). A brief overview of this case, as it relates to respondent, is provided by the initial service plan entered into the record at the September 1993 review hearing:

> Brittany was removed from her parents' care in April of 1991. . . . Since Brittany has been in foster care, her father Gary Hamlet has been incarcerated during a good part of this time. Mr. Hamlet was in the Livingston County Jail at the time of the initial court involvement in June of 1991. From June 1991 until March 1992, Gary was in the Livingston County Jail, Wayne County Jail and the Oakland County Jail. Gary was in jail for writing bad checks and also under police protection because he witnessed a murder in Detroit. It is unclear whether Gary was out of jail during any of that time period. Gary was placed on work release from the Oakland County Jail in April of 1992. . . . In November of 1992, Gary was [placed on probation] from jail. . . .Gary was arrested on 3-25-93 for failing to report to his parole officer. He has been incarcerated since that day. At this present time, this worker is aware of charges pending against Gary Hamlet in three counties. Gary is charged with writing a bad check in Genesee county. . . . Gary was

arraigned in Livingston County District Court on August 11, 1993. The charge in this court was writing a check with insufficient funds in the amount of $60.00. Gary has charges of three bad checks pending in Saginaw County. He states the prosecutor in Saginaw County intends to charge him with false pretenses, which carries a sentence of up to 10 years in jail.

Concerning respondent's parenting skills, the report provided:

The previous record shows that Gary Hamlet had very poor parenting skills during the time of Brittany's early life. The record states that Gary Hamlet provided virtually no child care. He expected others to care for his baby. At the present time, Kim states that this assessment was true. She states that Gary paid no attention to Brittany's needs, but would hold her only when he wanted to hold her, not when Brittany needed attention. Gary was out of jail on [probation] at the time of Kevin's birth. Kim states that Gary was very different during Kevin's early months. She states Gary was very attentive to Kevin's needs. He participated fully in the feeding, bathing, diapering and burping of baby Kevin. Kim could give no explanation as to how this change came about, but only that Gary had changed a great deal. Gary continued to live with his wife and infant until Kevin was 2 months old. When Kevin was 2 months old, Kim separated from him and got her own home. Gary was then arrested approximately one month later and has been incarcerated ever since. There has been no opportunity to observe Gary interacting with his children.

During the next two years, the court held several review hearings, and several updated service plans were entered into the record. On September 13, 1995, the hearing on the petition to terminate respondent's parental rights to Brittany and Kevin commenced. Respondent remained incarcerated during the entire proceeding. Brittany was just over five years old and

Kevin was approximately two and a half years old. Most notably, several persons employed by the Department of Social Services and persons called as expert witnesses testified regarding respondent's parenting potential.

Eunice Kallio, a foster care worker, was assigned to this case after remand. Kallio testified that during her entire tenure on the case, which spanned seventeen months, respondent was incarcerated. She believed that respondent was cooperative, but because he was incarcerated, he was unable to accomplish any of the goals of the service plans or prepare himself to care for his children. Kallio recommended termination of respondent's parental rights.

Beverly Thorpe, a foster care worker, testified as an expert in the area of social work. She was assigned to this case in January 1995, shortly before respondent was transferred to a half-way house. When she assumed the case, respondent had met none of the goals set forth in the parent-agency agreement. Thorpe prepared a new parent-agency agreement in February 1995, while respondent was at the half-way house. Although respondent began a parenting class and a spouse abuse class, he did not participate in Alcoholics Anonymous and Narcotics Anonymous meetings as required. Respondent also failed to establish a safe and suitable residence for the children, failed to maintain a lifestyle free of criminal activities, failed to cease the use of chemicals and alcohol, failed to seek treatment for chemical dependency and counseling, failed to successfully internalize the counseling and chemical dependency treatment, failed to choose and work with a therapist for nine months, and did not demonstrate that he could

provide a sufficient income to provide for the needs of the children.

Thorpe prepared an updated parent-agency agreement on April 6, 1995. At the time of the termination hearing, Thorpe had seen no progress by respondent toward successfully completing the parent-agency agreement steps. Thorpe noted that it would take a completely committed parent somewhere between a year and a half to two years to complete the goals on the parent-agency agreement. Because the children cannot tolerate a wait of another two years or more, Thorpe recommended that respondent's parental rights be terminated.

Denise DeKett, a field agent for the DSS at the Flint Correction Center Half-Way Program, assumed respondent's case on January 17, 1995. DeKett indicated that, although substance abuse treatment was made available to respondent, he failed to participate in the substance abuse program or attend AA or NA meetings. Respondent frequently attended a parenting class and a domestic violence program at the YWCA, but did not complete either class. Respondent was eventually charged with escape and transferred from her facility on April 4, 1995.

Diane Valente, a social worker, testified as an expert in the area of children and family therapy. She was assigned to provide therapy for Brittany in September of 1993, and again in August of 1995. Valente opined that even if respondent were released from prison, the children would not have time to wait for the necessary changes before respondent could care for them.

Ann Marie Tabatowski-Bush, a therapist, testified as an expert in the area of family therapy regarding

Brittany. Tabatowski-Bush noted several problems with Brittany, including: acting out, an uncontrollable temper, screaming fits, and inappropriate sexual touching of Kevin. Tabatowski-Bush stated Brittany had not bonded with respondent. On the basis of her knowledge of Brittany and the family's dynamics, Tabatowski-Bush recommended that respondent's parental rights be terminated immediately so that Brittany could be placed in a stable household.

Jane Mildred, a clinical social worker at the University of Michigan and an expert in the area of family assessment and psychological reports, assessed respondent in 1993 and 1995. She testified that respondent required long-term therapy, probably five to seven years, to deal with his personal issues. Mildred stated that because respondent has not spent significant time in the community, he has not demonstrated whether he can remain drug free. Mildred recommended that respondent's parental rights be terminated because he is unable to deal with his issues within a reasonable time, considering the ages and needs of Brittany and Kevin.

Charlene Kushler, Ph.D., testified as an expert in the area of psychology. Dr. Kushler gave respondent a clinical interview and a series of psychological tests, including the Rorschach test. The Rorschach test results showed, among other things, that respondent had an antisocial personality disorder. Kushler opined that because of this disorder, coupled with respondent's narcissism, it is very unlikely that he will respond to any therapy. Kushler opined that, as a result of respondent's diagnosis, he will never be able to parent his children adequately.

Zhigang Wang, a limited license psychologist with the Department of Corrections, testified as an expert in the area of clinical psychology. Wang also found that respondent has an antisocial personality disorder. Wang, however, believes that respondent's behavior may change with counseling and clinical intervention. Wang indicated that respondent has learned from the substance abuse counseling and has internalized what he is learning in their therapy sessions. Wang, nevertheless, was unable to predict whether respondent will be a good parent in the future given the insufficiency of the evidence.

On January 10, 1996, the probate court entered its lengthy and detailed opinion and order terminating the respondent's parental rights to the children. In terminating respondent's parental rights, the court concluded that there was clear and convincing evidence that the children were at "serious risk of harm due to the lack of permanency of a family or a preimary [sic] care giver." The court also stated:

> Mr. Hamlet has a very lengthy criminal history dating back to 1983 when he was twenty years old, according to his parole eligibility report, Exhibit 25. He has had approximately nine felony convictions and has been incarcerated almost continuously since 1987. Each of the three times he was out of prison during the five years of Brittany's life, he could not sustain a crime free and substance free life style and ended up being returned to the Department of Corrections. During these five years his children have desperately needed him as a care giver, however, the Court finds by clear and convincing evidence that he has failed to provide them with proper care and custody without regard to his stated intent to do otherwise. Furthermore, due to Mr. Hamlet's character and personality traits which are not amenable to change without long term therapy, the Court further finds based on clear and convincing evidence that Mr. Ham-

let will not be able to provide proper care and custody within a reasonable time considering the age of these children. They need and deserve permanency now. They are at serious risk of permanent psychological damage without that stability.

Respondent filed a motion for reconsideration and a new trial, which the court denied.

On appeal, respondent first argues that the probate court's finding that the statutory ground for termination was proved by clear and convincing evidence was clearly erroneous. We disagree. A decision regarding termination is reviewed in its entirety for clear error. *In re Hall-Smith*, 222 Mich App 470, 472; 564 NW2d 156 (1997).

MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) provides:

The court may terminate the parental rights of a parent to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

*       *       *

(g) The parent, *without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child.* [Emphasis added.]

We acknowledge that, viewed in a light most favorable to respondent, he attempted to cooperate and made some endeavors, given his situation, to comply with the requirements of his parent-agency agreement. There is also some support in the record for respondent's claims of lack of optimum service by the Family Independence Agency. However, the statutory standard upon which the court based its decision

to terminate respondent's parental rights requires the court to evaluate the acts and abilities of the parent, *"without regard to intent."* MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g) (emphasis added). The record supports the court's finding by clear and convincing evidence that during the entire pendency of this matter, respondent never provided proper care and custody for his children. As the trial court stated in its opinion and order, respondent "has a very lengthy criminal history dating back to 1983 . . . and has been incarcerated almost continuously since 1987." The evidence demonstrated that when respondent had the opportunity to parent his children during the brief periods that he was not incarcerated, he resumed criminal behavior and drug use. In fact, at the time of the last hearing in this matter in mid-1996, respondent remained incarcerated with no definite date by which he would be released having been set. Given that the children were born in 1990 and 1992, it is clear that respondent has failed to provide proper care and custody for the children.

There is also no reasonable expectation that respondent will be able to provide proper care and custody within a reasonable time considering the age of the children. All the witnesses, including those favorable to respondent, agreed that respondent required extensive counseling and treatment before there was any chance that he could adequately parent the children. In fact, respondent's most favorable expert witness, Wang, agreed that respondent needed to continue counseling for a long time, at least a year or two, depending on his progress. Wang could not even opine whether respondent would be able to parent until respondent was out of prison and living life

as a free man, making his own decisions, working, staying drug and alcohol free, and maintaining a home. We find that the probate court did not clearly err in finding the statutory ground for termination was met by clear and convincing evidence.

Respondent also claims that the probate court gave insufficient weight to the reports and testimony of Wang and Mildred, and gave too much weight to Kushler's report and testimony. Contrary to respondent's claim, in its opinion, the court addressed the reports and conclusions of all the expert psychologists who administered tests or counseling to respondent. Even if the court considered only Wang's report or only Mildred's report and disregarded the reports and testimony of Kushler, the court still would have had clear and convincing evidence to reach the same conclusion. Both Wang and Mildred indicated that neither could predict the potential of respondent's ability to parent until respondent was out of prison and could demonstrate his parenting abilities. Both also recommended long-term counseling. In fact, Mildred recommended termination of respondent's parental rights. Given that no date had been set for the respondent's release from incarceration and that respondent required extensive counseling before he could possibly parent the children, the court could conclude, on the basis of the report and testimony of Wang *or* Mildred, that respondent would not be able to provide a proper and stable home for his children within a reasonable time, considering the ages of the children. We find no error.

Respondent also argues that the trial court inappropriately relied on the Rorschach test used by Kushler because it is not a reliable determiner of narcissism.

In assessing an appellant's nonconstitutional allegation of error, the proper inquiry is whether there is "a reasonable probability that the error affected the outcome of the trial. *People v Hubbard*, 209 Mich App 234, 243; 530 NW2d 130 (1995). The general consensus, even from respondent's own testimony, was that he required years of therapy before he could adequately parent the children. As discussed previously, even if Kushler's entire report and testimony were eliminated from the record, the outcome would be the same.

Respondent further argues that the court erred in relying on Kushler's report because it was speculative and impermissibly based on "what might happen in the future." Respondent cites *In re Hulbert*, 186 Mich App 600, 601; 465 NW2d 36 (1990), where this Court found that the only evidence of actual neglect was that the mother's failure to keep the child on an apnea monitor for the full time as advised by a doctor and to give the child a proper dosage of medicine. The *Hulbert* Court found the trial court's reliance on the testimony of three psychologists who opined that the respondents' "borderline" mental conditions "may" render them unfit or "ineffective" parents or "might" cause them to possibly inflict harm on their children was clearly erroneous. *Id.* at 602.

This case is vastly different from *In re Hulbert*. Here, there is certainly sufficient evidence of specific acts of neglect of Brittany by respondent and of respondent's failure to provide a stable home for either child. Respondent had a history of drug and alcohol abuse and criminal behavior. He was incarcerated during almost the entire pendency of this case. There also was every indication that respondent

would not be able to provide a stable home and properly parent his children within a reasonable time considering the ages of his children. In sum, the witnesses in this case did not merely speculate on what could happen in the future. Rather, they had concrete evidence of respondent's actions and personality traits on which to base a prognosis.

Respondent also claims that the probate court erred in incorporating the statement of facts from its 1991 opinion into its 1996 opinion because res judicata bars relitigation of the same facts. In order for a prior judgment to operate as a bar to a subsequent proceeding, three requirements must be satisfied: (1) the subject matter of the second action must be the same; (2) the parties or their privies must be the same; and (3) the prior judgment must have been on the merits. *In re Pardee*, 190 Mich App 243, 247-248; 475 NW2d 870 (1991); *In re Koernke Estate*, 169 Mich App 397, 399-400; 425 NW2d 795 (1988). If, however, the facts change or new facts develop, res judicata does not apply. *Id.*; see, also, *Labor Council, Michigan Fraternal Order Police v Detroit*, 207 Mich App 606, 608; 525 NW2d 509 (1994).

Because this Court ordered that the prior judgment be reversed, the case be retried, and the probate court make findings of fact, res judicata did not bar the subsequent proceeding. This Court also found no fault with the factual findings in the probate court's 1991 opinion. In addition, new evidence concerning events, reports, and evaluations were made a part of the record. In its opinion of January 10, 1996, the probate court set forth over ten pages of additional findings of fact. Furthermore, as the probate court concluded, the findings "are supported on the whole

record by clear and convincing evidence." In the second hearing, the witnesses all testified regarding the same facts that led up to the original termination order. Respondent has not given one example of any finding of fact incorporated by the probate court from the finding of facts from the 1991 opinion that was not supported by the evidence entered in the 1995 hearing. We find no error.

Respondent further claims that the court erred in admitting testimony that weighed his home against the advantages of another potential home for the children. We agree that it is inappropriate to weigh the advantages of a foster home against the home of the natural and legal parents. *In re Mathers*, 371 Mich 516, 530; 124 NW2d 878 (1963). Rather, their fitness as parents and the question of neglect of their children must be measured by statutory standards without reference to any particular alternative home that may be offered the children. *Id.*

Contrary to respondent's claim, it is clear from the court's lengthy and detailed opinion that it did not base its decision to terminate respondent's parental rights on a comparison between a foster home and a home with respondent. The court's decision was clearly based on respondent's fitness as a parent under MCL 712A.19b(3)(g); MSA 27.3178(598.19b) (3)(g). Reversal therefore is not warranted on this basis. *In re Atkins*, 112 Mich App 528, 541-542; 316 NW2d 477 (1982).

Respondent also argues that the court erred in denying his motion to reopen the proofs so that he could enter evidence establishing that a date for his release from incarceration had been set and that he had taken more programs and intended to seek inde-

pendent counseling. Respondent, however, has failed to cite any support for this claim of error. A party may not merely announce a position and leave it to us to discover and rationalize the basis for the claim. *In re Toler,* 193 Mich App 474, 477; 484 NW2d 672 (1992). Even if the proffered evidence had been considered, it would hot have caused the court to reconsider its decision to terminate respondent's parental rights, considering the ages of the children, the numerous other dates for the respondent's release proffered to the court, the extensive therapy required, and the length of time the children had been in limbo while this matter traveled through the courts. Again, we find no error in the probate court's ruling.

Respondent also claims that MCL 712A.19b(5); MSA 27.3178(598.19b)(5) is unconstitutional because it shifts the *burden of proof* from the government to the parent to show that termination is not in the child's best interests. Because this issue involves a question of law, we review it de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991). Under established rules of statutory construction, statutes are presumed constitutional, and courts have a duty to construe a statute as constitutional unless unconstitutionality is clearly apparent. *Mahaffey v Attorney General,* 222 Mich App 325, 344; 564 NW2d 104 (1997). Every reasonable presumption must be made in favor of constitutionality. *Vargo v Sauer,* 215 Mich App 389, 394; 547 NW2d 40 (1996). To determine whether a statute violates due process, the pertinent issue is whether the statute bears a reasonable relation to a permissible legislative objective. *Mahaffey, supra* at 344. The party challenging the constitutionality of a statute

bears the burden of overcoming the presumption of constitutionality. *Michigan Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 401; 522 NW2d 643 (1994).

MCL 712A.19b(5); MSA 27.3178(598.19b)(5)[1] provides:

> *If the court finds that there are grounds for termination of parental rights*, the court *shall* order termination of parental rights and order that additional efforts for reunification of the child with the parent shall not be made, unless the court finds that termination of parental rights to the child is clearly not in the child's best interests. [Emphasis added.]

In *In re Hall-Smith, supra*, this Court recently addressed MCL 712A.19b(5); MSA 27.3178(598.19b)(5) and the burden of proof in a parental termination case. This Court found that "the *burden of proof remains with the petitioner* to show that *a statutory ground* for termination has been met by clear and convincing evidence, MCR 5.974(A)(3) and (F)(3)." 222 Mich App 472-473 (emphasis added). The Court further found that, once the burden of proof is sustained, "*the burden of going forward with evidence that termination is clearly not in the child's best interest rests with the respondent.*" *Id.* at 473 (emphasis added). "Absent any evidence addressing this issue by the parent, termination of parental rights is *mandatory.*" *Id.* (emphasis added). *In re Hall-Smith* makes it clear that MCL 712A.19b(5); MSA 27.3178(598.19b)(5) does not shift the *burden of proof* onto the parents. Rather, MCL 712A.19b(5); MSA

---

[1] This provision was added to the statute by 1994 PA 264, § 1, which was effective January 1, 1995.

27.3178(598.19b)(5) simply requires that a parent put forth some evidence from which the trial court could conclude that termination is clearly not in the child's best interest. Accordingly, MCL 712A.19b(5); MSA 27.3178(598.19b)(5) is not unconstitutional.[2]

Respondent argues that the probate court "abused its discretion" in finding that termination of his parental rights was in the children's best interests. We initially note that, contrary to respondent's statement of the issue, the court had a nondiscretionary decision regarding termination. MCL 712A.19b(5); MSA 27.3178(598.19b)(5) creates a mandatory presumption that can be rebutted only by a showing that termination is clearly not in the child's best interest. If no such showing is made and a statutory ground for termination has been established, the probate court is without discretion and must terminate parental rights. *In re Hall-Smith, supra* at 472-473.

Here, there was no evidence that termination of respondent's parental rights was clearly not in the children's best interests. At the time of the motion for a new trial, Brittany was almost six years old and Kevin was almost three and a half years old. There was extensive testimony concerning the needs of the children and the psychological problems they continued to suffer because of long-term uncertainties and the lack of any long-term stability. Termination of respondent's parental rights was clearly in the children's best interests.

---

[2] We note that the probate court incorrectly ruled that the statute was constitutional because it "did not consider the burden shifted to the respondent to prove that it was not in the children's best interest for parental rights to be terminated." This Court, however, will not reverse a trial court's decision if the right result is reached for the wrong reason. *In re Powers*, 208 Mich App 582, 591; 528 NW2d 799 (1995).

Respondent further argues that the probate judge should have disqualified herself after the 1991 hearing because she was biased against respondent. Absent an actual personal bias or prejudice, a judge will not be disqualified. MCR 2.003(B)(1); *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996). Opinions formed by a judge on the basis of facts introduced or events that occur during the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* at 496. Likewise, judicial remarks during the course of a trial that are " 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *Id.* at 497, n 30, quoting *Liteky v United States*, 510 US 540, 555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). Moreover, a party who challenges a judge on the basis of bias must overcome a heavy presumption of judicial impartiality. *Cain, supra* at 497.

We have reviewed respondent's claims of error and conclude that he has failed to overcome the heavy presumption of judicial impartiality. The majority of the excerpts on which respondent relies do not even hint of a personal bias or prejudice. There is no evidence that the probate judge harbored a deep-seated antagonism toward respondent. In fact, as respondent testified, the court personally helped him to participate in counseling and learning sessions in the prison when it wrote a note or called the prison on his behalf after he had so requested of the court. Respondent stated the court's participation in this matter "opened doors" that never would have been opened

otherwise. The fact that the court terminated respondent's parental rights is insufficient as a valid basis for bias or partiality. Moreover, there is overwhelming evidence that the opinions of the court were formed on the basis of facts introduced at the hearings, trial, and events that occurred during the course of this and prior proceedings. We therefore conclude that the probate judge did not err in denying respondent's motion to recuse herself.

In conclusion, we find that ample evidence of respondent's unfitness as a parent was presented at the termination hearing such that we find no error in the probate court's termination of respondent's parental rights pursuant to MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g). We further find that respondent failed to put forth evidence that termination of his parental rights was clearly not in the children's best interests.

Affirmed.