*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. BENNETT, Minor.

UNPUBLISHED
December 16, 2025
11:09 AM

No. 375529
Bay Circuit Court
Family Division
LC No. 23-013502-NA

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Respondent-father appeals of right the trial court's order terminating his parental rights to the minor child, BB, under MCL 712A.16(3)(c)(*i*) (conditions that led to adjudication continue to exist), (3)(g) (failure to provide the child with proper care or custody although financially able to do so), and (3)(j) (reasonable likelihood of harm if the child is returned to the parent on the basis of the parent's conduct or capacity). We affirm.

## I. FACTS

Petitioner, the Bay County Department of Health and Human Services (DHHS), filed a petition requesting that the trial court take jurisdiction over BB after the police executed two search warrants at respondent's residence, within the span of a year (March 10, 2022, and March 8, 2023), and recovered substantial amounts of illegal narcotics and several firearms. The petition highlighted that a majority of these items were found in BB's room, and the search warrants were executed when BB was present in the residence. The trial court removed BB from respondent's care and placed BB with respondent's cousin and his husband.

At his August 7, 2023 adjudication hearing, respondent admitted that the police executed two search warrants at his home while BB was present. Respondent further admitted that he was arrested after the 2023 warrant was executed and released on bond with the condition that he not use alcohol or drugs without a prescription. However, respondent stated that he violated that bond after testing positive for methamphetamine and amphetamines, which led to his incarceration. Respondent acknowledged that he violated his bond again on July 12, 2023, by testing positive for methamphetamine and amphetamines, and that he was sentenced to 93 days in jail as a result.

-1-

Respondent was given a parent agency treatment plan which required that he not use illegal substances, attend substance abuse therapy with Sacred Heart, attend AA/NA once per week, and continue random drug screening three times per week. Respondent was further ordered to attend therapy for his mental health and follow of recommendations of his psychological assessment. Respondent was given supervised parenting time and also expected to participate in home parenting education.

The trial court identified respondent's substance abuse as his primary barrier to his reunification with BB, and the trial court noted that respondent was receiving substance abuse treatment from a local rehabilitation center while successfully participating in his parenting time with BB after he had been released from jail. However, respondent's progress was disrupted whenever he violated his bond conditions for methamphetamine use and was, again, returned to jail. Respondent entered an inpatient substance abuse rehabilitation clinic after being released from jail, but was returned to jail after he completed the program. Throughout the case, the trial court heard testimony that BB was becoming increasingly agitated by respondent's cycle of reincarceration as he did not "understand why his dad keeps doing what he's doing to end up in jail." It was reported that respondent's pattern of behavior was negatively affecting BB's developmental progress.

On August 8, 2024, petitioner filed a petition for termination of respondent's parental rights to BB, listing respondent's substance abuse and mental health issues as his barriers to reunification. Petitioner further argued that termination was in BB's best interests because respondent had not benefited from the services he was provided and that he would need "a vast amount of additional time in services to begin displaying some motivation and willingness to safely care for [BB]."

During the October 2024 termination hearing, BB's therapist testified that she had diagnosed BB with mental health disorders including Attention Deficit Hyperactivity Disorder (ADHD) and adjustment disorder. She testified that respondent's inconsistent behavior would set back BB's developmental progress and described his emotional state when this occurred as a "roller coaster." The therapist also testified that BB's general well-being dramatically improved after he was placed with his foster parents, but that this progress would go "downhill" if BB was returned to respondent.

One of BB's foster parents testified that BB did not know how to care for himself when he arrived at the foster home. Specifically, BB did not know how to brush his teeth, bathe on his own, or how to tie his shoes. BB underwent substantial dental care following his entry into the foster home because he was suffering from gingivitis and cavities. A doctor informed the foster parents that BB was underweight after an examination. In terms of his educational performance, BB did not know how to read and misbehaved at school before he entered foster care.

The foster parent testified that BB progressed greatly in his household. After being in foster care, BB was able care for himself and completed chores without needing to be asked. His dental issues were resolved, and he had gained weight. BB started to read at a level between kindergarten and first grade, and BB received commendation for his good behavior in class. The foster parent testified that BB's mental disorders were being treated with therapy and medication, and that he and his husband worked with BB's school to develop an educational plan to continue BB's progress. The foster parent rejected the idea of guardianship for BB because he believed that

it would disrupt BB's newly established sense of stability. Instead, he testified that his family was willing to adopt BB.

Respondent testified at the hearing that he did not realize that he had a substance abuse issue until he entered the in-patient rehabilitation clinic. He testified that he had a relapse plan in place in case he began using drugs again but provided no evidence of it to the trial court, and he was unsure when he would be released from jail because his criminal trial was set to begin in January 2025.

Regarding BB, respondent stated that he had been aware that BB suffered from ADHD when he was in respondent's care but that he had not sought medication for BB because he did not want BB to become dependent on it. Further, it was respondent's belief that most of BB's developmental issues stemmed from his separation from respondent and that these issues would resolve themselves once BB was returned to respondent's care.

The trial court terminated respondent's parental rights in a written opinion and order. Respondent now appeals that decision.

## II. ANALYSIS

Respondent raises three issues on appeal: first, he argues that the trial court committed reversible error by issuing an order to terminate his parental rights more than 70 days after the initial termination hearing in violation of MCL 712A.19(b) and more than 28 days after taking final proofs in violation of MCR 3.977(I)(1). Next, he argues that the trial court clearly erred by finding that statutory grounds existed under MCL 712A.19(3)(c)(*i*), (3)(g), and (3)(j) through clear and convincing evidence to terminate his parental rights. Finally, respondent argues that the trial court clearly erred by finding by a preponderance of the evidence that termination was in BB's best interests. For the reasons that follow, we disagree with respondent and affirm the trial court's decision to terminate his parental rights.

## A. DELAY OF PROCEEDINGS

Respondent first argues that the trial court's failure to comply with the timing requirements outlined for holding the termination hearing and issuing a final order requires reversal. We disagree.

Respondent did not object to any delay or otherwise raise this issue before the trial court; thus, this issue is unpreserved. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review issues involving the interpretation of statutes and court rules de novo. *In re Mason*, 486 142, 152; 782 NW2d 142 (2010). However, unpreserved issues in child protection proceedings are reviewed for plain error affecting substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019).

The part of MCL 712A.19(b)(1) relevant to this issue on appeal provides that: "The court shall issue an opinion or order regarding a petition for termination of parental rights within 70 days after the commencement of the initial hearing on the petition. The court's failure to issue an opinion within 70 days does not dismiss the petition."

Similarly, MCR 3.977(I)(1) provides:

> The court shall state on the record or in writing its findings of fact and conclusions of law. Brief, definite, and pertinent findings and conclusions on contested matters are sufficient. If the court does not issue a decision on the record following hearing, it shall file its decision within 28 days after the taking of final proofs, but no later than 70 days after the commencement of the hearing to terminate parental rights.

We have addressed a claim of error resulting from a violation of the statutory 70-day rule and the court rule preceding MCL 3.977(I)(1)[1] in *In re TC*, 251 Mich App 368, 369; 650 NW2d 698 (2002). This Court found that the statute expressly stated then—as does the current version now—that a trial court's failure to issue a final order within 70 days does not require dismissal of the petition. *In re TC*, 251 Mich App at 370. Neither the court rule nor the statute sets forth any penalties for a trial court's violation. *Id.*

This Court reasoned in *In re TC*, 251 Mich App at 371, that "[t]here is no reason to suppose that the Supreme Court intended that the penalty for delay would be more delay." This Court also cited MCR 5.902(A)—the predecessor rule to MCR 3.902(A)—for the proposition that "[l]imitations on corrections of error are governed by MCR 2.613." *Id.* The Court observed that MCR 2.613(A) provides that errors by the trial court are not grounds for disturbing an order unless the failure to do so would be inconsistent with substantial justice. *Id.* The Court held as follows:

> Thus, the Supreme Court has stated in the court rules that a trial court's error in issuing a ruling or order or an error in the proceedings is not grounds for this Court to reverse or otherwise disturb an order unless this Court believes that failure to do so would be inconsistent with substantial justice. Thus, we conclude that the family court's failure to adhere to the time requirements imposed by [the predecessor to MCR 3.977(I)(1)] does not require reversal of its order terminating respondent's parental rights. [*Id.*]

In this case, the termination hearing concluded on October 25, 2024; however, the trial court did not enter an opinion and order terminating respondent's parental rights until January 24, 2025. This was in error because this decision occurred more than 70 days after the commencement of the termination hearing and more than 28 days after taking final proofs. Respondent argues that the trial court's late termination order deprived him of an opportunity to reopen proofs to alert the trial court that he was released from incarceration. He argues further that this prejudiced him

---

[1] The court rule at issue in *TC* was former MCR 5.974(G)(1), which is the predecessor to MCR 3.977(I)(1) and was substantially identical to it. See *In re TC*, 251 Mich App at 369; see also *In re Utrera*, 281 Mich App 1, 13 n 4; 761 NW2d 253 (2008) (noting that, effective May 1, 2003, "MCR subchapter 5.900 was moved to new MCR subchapter 3.900, and MCR 3.977 corresponds to former MCR 5.974[.]").

because his incarceration following the termination hearing was the primary reason as to why the trial court terminated his parental rights.

Respondent's argument, however, is misplaced because he has failed to argue how the trial court's untimely order prevented him from providing evidence that would have established a date for his release from incarceration. Further, respondent never moved to reopen proofs in the trial court. Moreover, respondent has not provided any factual support to indicate that he was released from jail on or around January 7, 2025, which is the date he asserted to the court was set for trial to resolve his criminal charges. Thus, respondent has not provided this Court with a reason to believe that a timely decision would have resulted in a different outcome.

Even if respondent had been allowed to provide evidence that he was set to be released from jail, respondent is not entitled to reversal because there is no indication that the trial court would have reconsidered its decision to terminate respondent's parental rights. The trial court considered BB's age, the length of time BB had been in foster care awaiting resolution of the proceedings, and his extreme need for stability and permanence. *In re Hamlet (After Remand)*, 225 Mich App 505, 520-21; 571 NW2d 750 (1997), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353, n 10 (2000). Further evidence would not have changed how the trial court evaluated these factors. If the trial court issued its opinion at the conclusion of the October 2024 termination hearing, and in accordance with MCL 712A.19(b)(1) and MCR 3.977(I)(1), this would have been months before respondent's hoped for release date in January 2025. In addition, the trial court explicitly acknowledged in its opinion that neither incarceration nor criminal history alone justify termination. Accordingly, respondent is not entitled to reversal of the termination decision.

## B. STATUTORY GROUNDS

Respondent next argues on appeal that the trial court clearly erred in finding statutory grounds under MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j) by clear and convincing evidence to terminate his parental rights. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). When applying the clear error standard in parental termination cases, we must afford deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 594 NW2d 653 (2016) (quotation marks and citation omitted).

The trial court terminated respondent's parental rights to BB, in part, under MCL 712A.19b(3)(c)(*i*). In relevant part, that statute provides:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Clear and convincing evidence supports the trial court's determination that the conditions that led to adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified given BB's age. BB came under the trial court's jurisdiction following two police raids conducted on respondent's residence within the span of a year, which the trial court found traumatized BB since BB was present for those raids. The trial court identified the primary barrier for reunification as respondent's substance abuse disorder and his cycle of reincarceration. Although respondent engaged in substance abuse therapy in between and during incarcerations, he showed no substantial progress. Any progress he did achieve was immediately thwarted by his relapse into methamphetamine abuse.

Admirably, respondent was able to complete a seven-month long in-patient rehabilitation program. However, this progress was achieved at the end of the proceedings and must be considered in light of respondent's multiple prior relapses into drug use and subsequent incarceration. *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 334. ("Even if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication."). At the termination hearing, a caseworker testified that she was unsure how much longer it would take respondent to fully address his substance abuse issues. Respondent himself testified that he would "always be an addict" and that he was unable to provide any evidence to substantiate his assertion that he had a "relapse plan" in place to prevent harm to BB in the event he abused drugs again.

By the time the termination proceedings had ended, the trial court calculated that BB had been in foster care for 595 days, 421 of which had elapsed since the issuance of the initial disposition hearing related to respondent. Even assuming that respondent was released from jail in January 2025, it would not have been reasonable for the trial court to conclude that respondent could rectify the conditions that led to adjudication given his history of conduct, the uncertainty surrounding how much more time he needed to fully address the barriers to reunification, and, most importantly, how much time BB had already waited for respondent to demonstrate progress. *See In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991) ("The trial court's decision to terminate appropriately focused not only on how long it would take respondent to improve her parenting skills, but also on how long her three children could wait for this improvement.").

Therefore, the trial court did not clearly err by finding that clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Because we conclude that at least one ground for termination existed, it is unnecessary to discuss whether the trial court erred by terminating respondent's parental rights under MCL 712A.19b(3)(g) and (j). *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## C. BEST INTERESTS

Lastly, respondent argues that the trial court erred when it found that termination of his parental rights was in BB's best interests. Respondent also argues that a guardianship, rather than termination, was a better option because BB was placed with a relative. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013), lv den 495 Mich 856 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App at 33. "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App at 237 (quotation marks and citation omitted). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider any history of domestic violence, the respondent's compliance with their parent-agency agreement, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption. *In re White*, 303 Mich App at 714. A best-interests analysis should focus on the child, not the respondent. *In re Moss*, 301 Mich App at 87. Because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with a relative when the case proceeds to termination is a factor to be considered when determining whether termination is in a child's best interests." *In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted).

In this case, the trial court considered several factors in making its decision but determined that, above all else, establishing permanency and stability for BB was in his best interests. At the time of termination, BB was 11 years old. He had spent the majority of his life with respondent and the trial court heard testimony that respondent shared a bond with him. The trial court also heard testimony that respondent always acted appropriately when visiting with BB and that respondent kept in contact with BB while he was incarcerated by means of letters and phone calls. Nevertheless, the trial court was presented with evidence that respondent's conduct was damaging BB emotionally and hindering his developmental progress because BB was often waiting for respondent given respondent's repeated drug abuse and resulting incarcerations.

Further, the trial court specifically considered the fact that BB was placed with a relative (i.e., respondent's cousin).  The trial court was presented with substantial evidence that BB's basic hygienic, educational, and physical/mental health needs were not being addressed by respondent.  In contrast, the trial court was presented with substantial evidence that BB's foster parents taught BB to care for himself, drastically improved his reading ability, and instructed BB on how to behave at school.  Moreover, the trial court heard testimony that indicated that the foster parents solved BB's significant dental health needs, put him on a path towards obtaining a proper body weight, and addressed his mental health issues with therapy and medication.  The foster parent testified that his household was willing to adopt BB and that adoption was in his best interests.

The court also considered and rejected the possibility of a guardianship with respondent's cousin.  A trial court is not required to establish a guardianship if it is not in BB's best interests to do so.  *In re Mason*, 486 Mich at 168-169.  In this case, the overriding concern was BB's extreme need for stability and permanence.  At the termination hearing, the trial court heard extensive testimony indicating that a guardianship was not in the best interests of BB because it would disrupt the progress that he had made in achieving stability in his own life and with his foster parents.  Moreover, the foster parent expressly rejected a guardianship for those reasons, and respondent never petitioned for a guardianship.

Therefore, the trial court did not clearly err when it found that a preponderance of evidence supported its decision that termination of respondent's parental rights was in the best interests of BB.

Affirmed.


/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi